In the Matter of the Estate of JOHN J. FINUCANE, Deceased.

Surrogate's Court, Monroe County, November 30, 1950.

*Grantier Neville* for Lincoln Rochester Trust Company and another, as executors of John J. Finucane, deceased, petitioners.

*Carlyle B. Newcomb,* special guardian for Cornelius Strakosh and others, infants, respondents.

WITMER, S. Petitioners as executors of testator's will instituted this proceeding to determine the validity therein of testator's attempt to grant to each of his children a power of appointment of the remainder of the trusts which he created, respectively, for each child for life. Before final submission of the question to the court petitioners procured from each of testator's children a renunciation of said power of appointment and filed them with a supplemental petition in which petitioners ask the court, if it finds the powers of appointment to be valid, to determine the validity of such renunciations.

In creating the trusts and granting the powers of appointment testator was exercising a special power of appointment granted to him under the will of his father, Thomas W. Finucane. In a previous construction proceeding herein (*Matter of Finucane,* 193 Misc. 439) it was held that although this testator had only a special power of appointment, he was nevertheless authorized to appoint in trust. The question of the validity of the new powers of appointment, however, was not raised nor determined in the previous proceeding.

Under the will of Thomas W. Finucane a trust for his son, the testator herein, was created for life with power to appoint the remainder " to his children and descendants and in such manner and in such proportions as my said son may direct and appoint by his last Will and Testament." Testator died in 1947 leaving a will dated April 23, 1936, which has been probated. In exercising the special power of appointment of the remainder of the trust which his father created for him as above noted, testator appointed it in equal shares to his five children in trust for life, and further provided that as to the share given in trust for each child such child was granted the power to appoint the remainder " to his or her children and descendants and in such manner and in such proportions as said child may direct and appoint by his or her last Will and Testament." He further provided that in default of appointment by his respective children the remainder shall go to their respective children and issue of deceased children equally, per stirpes, and if any die without issue, such share shall be paid to the surviving brothers and sisters equally.

The questions of the validity of the attempted creation of further powers of appointment in the children of this testator and the validity of their renunciations thereof are important because, if the powers of appointment be valid and the renunciations ineffective, it is claimed that a substantial additional estate tax will be due upon the newly created powers of appointment (Internal Revenue Code, § 811, subd. [f], par. [2], cl. [B]); and in any event testator's children wish to know whether they should make provision in their wills concerning the granted powers.

The provision in the Internal Revenue Code for taxing a second power is so broad as to be inconsistent with the other provisions of the section. It seems that Congress, by enacting clause (B) of paragraph (2) of subdivision (f) of section 811 of the Internal Revenue Code, did not mean to tax a newly created power of appointment which was limited to appointment among the same restricted class as the original power, because, although a general power is taxable, exemption is granted to a power limited to a certain family group. (Internal Revenue Code, § 811, subd. [f], par. [2], cl. [A].) There apppears to be no reason for denying the exemption merely because the donee of the power authorizes another to make the appointment within the same limited family group. No possibility exists that any one outside of that group may benefit, and Congress has said that appointment may be made in the first instance to such group without the property being treated as a part of the taxable estate of the donee of the power. But it is not for this court to determine that question; and we turn to the question of the validity of the attempt to create the power.

Had Thomas W. Finucane granted to his son, the testator herein, a general power of appointment, there is no doubt that the attempted creation by testator of powers of appointment in his children would be valid. (*Crooke* v. *County of Kings,* 97 N. Y. 421; *Matter of Wildenberg,* 174 Misc. 503, 509; Restatement, Property, § 357; 1 Scott on Trusts, § 17.2.) But only a special power of appointment was granted to testator here, and the question is whether he had the right to delegate the appointment to another or others. It is argued that the failure of counsel to find a New York case upholding such delegation of the power is evidence that no such right exists.

In *Crooke* v. *County of Kings* (*supra*) involving a general power of appointment, the court said at page 453: '' It is settled beyond controversy, that when the donee of a power

has any discretion to exercise for the benefit of others, in the execution of the power, he must exercise such discretion, and the execution of the power cannot be delegated. But I think it is equally clear that, when there is no discretion to be exercised, when one person can execute the power as well as another, then its execution may be delegated. In such case there can be no reason for holding that the donee of the power must personally execute it." On page 455 of the same opinion the court cited and discussed with seeming approval the English case of *Ingram* v. *Ingram* (2 Atk. 88 [1740]), which held that a special power could not be delegated. The question at bar is virtually identical with the one in the *Ingram* case (*supra*). There a husband was granted a power of appointment of a reversionary interest subject to a life estate " in such shares and proportions as he should think fit among the issue of the marriage, and for want of such appointment by the husband, to his right heirs." By his will, the husband delegated the power of appointment to his wife, " and for want of such appointment, in equal shares between his two children." The court held that the power was personal to the husband, that he could not delegate it, that his attempt to grant the power to his wife " is absolutely void ", and that " the latter part where he gives it in equal shares between the two children, is a good appointment."

There are some general statements by text writers which petitioners contend support their position, in addition to the foregoing. In Farwell on Powers (3d ed., p. 499) it is stated: " By the terms of its creation the obligation of the donee to exercise personal discretion is inherent in a special power, which can, therefore, never be delegated." And it is the general rule that in the administration of a trust a trustee may not delegate discretionary duties which the testator expected him to perform. (2 Scott on Trusts, § 171, § 171.2.) In the latter section, at page 913, Professor Scott says: " It is generally true, of course, that such discretion as is involved in the exercise of a power should be exercised by the trustee personally." But these authors do not discuss the matter with sufficient particularity to be of great help here, and there does not seem to be a New York case upon the precise point at issue.

In the previous proceeding (*Matter of Finucane*, 193 Misc. 439, 441, *supra*) it was held that there was no such inherent or magical difference between a special and general power of

appointment as to bar the donee of a special power from appointing in trust. Likewise, it seems that there is no inherent reason why a donee of a special power may not create a new power of appointment. It has been correctly said that the maxim that an agent may not delegate his authority, confuses rather than enlightens in this discussion. As in most matters of will constructions, it is fundamentally a question of the testator's intention — in this case the intention of the original donor of the power, Thomas W. Finucane. That is the view taken by the American Law Institute in its Restatement of the Law of Property (§ 359, subd. [2]) where it states a principle which governs the question at issue, providing as follows: " (2) The donee of a special power can effectively exercise it by creating in an object an interest for life and a special power to appoint among persons all of whom are objects of the original power, unless the donor manifests a contrary intent."

In the instant case we have a special power of appointment originally granted to this testator to appoint " to his children and descendants ". In the prior proceeding herein (193 Misc. 439) we held that " descendants " meant issue more remote than children, and that testator created valid trusts for the respective lives of his five children. He created in each such child a special power to appoint " to his or her children and descendants " who manifestly are " objects of the original power ", within the quoted provision of the Restatement. There is nothing to indicate that the donor, Thomas W. Finucane, the testator's father, had any contrary intent.

Of course testator's children could not appoint to the objects by suspending the power of alienation any further, since in each case on the death of a child the funds will have been suspended for two lives since the death of the donor; but the power could be exercised by directing ultimate and final distribution.

In the interests of carrying out the objects of the Restatement of the Law and what seems to be the authorization and intent of the original donor in this case, it is held, upon the special language in the wills herein, that the donee testator created a new valid special power of appointment in each of his five children.

We must, therefore, consider the effect of the renunciations by said children of the powers of appointment. Just as a legatee may renounce a legacy, a donee of a power of appointment may renounce such power. (*Helvering* v. *Grinnell*, 294

U. S. 153; *Commissioner of Internal Revenue v. Cardeza's Estate*, 173 F. 2d 19.) The renunciation must, of course, be made within a reasonable time. (*Matter of Wilson*, 298 N. Y. 398.) The testator died in 1947, only thirteen years after his father's death. His five children are young adults, and presumably it will be many years before any exercise by them of the powers of appointment could be effective. Considerable time was consumed upon the first construction proceeding in which they sought to have determined that the creation of the trusts was an invalid exercise of the special power of appointment granted to testator and that they took the remainder of the fund outright in equal shares. There is nothing, except their failure to renounce until now, which these children have done, to suggest an acceptance on their part of the new powers of appointment. Under the circumstances of this case, I hold that they have duly renounced such powers of appointment within a reasonable time (*Matter of Wilson*, 298 N. Y. 398, 404, *supra*), and that upon their respective deaths the remainders of their shares respectively shall be distributed in accordance with the terms of this testator's will providing for disposition of the remainders of the several trusts in the event of failure of the life beneficiaries to appoint such remainders.

Submit decree accordingly.