Estate of Genevieve ROLIN, Deceased, Haydee Rolin and Marine Midland Bank—New York, Executors, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 80, Docket 78–4043.

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1978.

Decided Dec. 6, 1978.

William B. Warren, New York City (Patricia B. Real, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, of counsel), for appellees.

Ernest J. Brown, Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Mary L. Jennings, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for appellant.

Before KAUFMAN, Chief Judge, and SMITH and VAN GRAAFEILAND, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

In this case, we must determine the effectiveness, for estate tax purposes, of an instrument by which the executors of the estate of Genevieve Rolin purported to renounce her interest in a trust created by her late husband, Daniel. The Tax Court held the renunciation effective. 68 T.C. 919 (1977). We affirm.

Daniel established the trust in 1958, retaining for life the income plus the power to amend or revoke the trust at any time. Upon his death, the corpus was to be divided into two parts: "Trust A" would receive an amount equal to the maximum marital deduction available to Daniel's estate under I.R.C. § 2056, and "Trust B" would receive the remainder.[1] Genevieve would receive the income of both trusts for life. In addition she was granted the right to invade the corpus of Trust A at any time and in any amount during her life, and she also received a general testamentary power of appointment over its assets. If she failed to exercise the power, Trust A would be merged into Trust B at her death and the assets distributed to the Rolins' issue.

Daniel died on September 30, 1968. Genevieve, who was then 72 years old and suffering from a heart ailment, died four months later. Between Daniel's death and her own, Genevieve had not received the income from either trust, nor had she attempted to invoke the power of appointment over Trust A.[2] As soon as Genevieve's executors qualified, they attempted to renounce her interest in the trust. Even without the Trust A assets, her estate was larger than Daniel's; consequently, the progressive rate structure of the federal estate tax would render inclusion of those assets in her estate disadvantageous to the Rolins' heirs. Thus, the tax saving to Daniel's estate created by the marital deduction of I.R.C. § 2056(b)(5) would be more than offset by the increased liability of Genevieve's estate under § 2041, which taxes property over which the deceased held a general power of appointment at death. If the renunciation is held effective, Daniel's estate will pay about $35,000 more estate tax than otherwise, but Genevieve's will pay approximately $99,000 less.

We agree with the Tax Court that the renunciation was effective in this case. New York law[3] permits executors, within a reasonable time, to disclaim legacies to which their testator was entitled. *Estate of Dreyer v. Commissioner of Internal Revenue*, 68 T.C. 275 (1977), acq., 1978–12 I.R.B. 6; *Estate of Hoenig v. Commissioner of Internal Revenue*, 66 T.C. 471 (1976), acq., 1978–12 I.R.B. 6. Moreover, disclaimers "relate back" to the date of the gift (here, September 30, 1968, the date of Daniel's death) and prevent title from ever vesting. *Albany Hospital v. Albany Guardian Society*, 214 N.Y. 435, 441, 108 N.E. 812 (1915).

The Commissioner does not dispute this, nor does he now contend that the Tax Court erred in holding that the power to disclaim is not limited to legatees, and extends to *inter vivos* gifts taking effect at death. *See* 68 T.C. at 925 (citing cases). Rather, he argues that because a power of appointment is not a descendable property right but a personal privilege that expires at death, *Mastin v. Merchants National Bank*, 278 Ala. 261, 264, 177 So.2d 817, 820 (1965), there was nothing for the executors to disclaim. How, he asks, could they renounce a power they could not exercise?

---

1. Under Daniel's will, the trust assets were to include his residuary estate in addition to the corpus existing at the time of his death.

2. Despite his argument in the Tax Court, the Commissioner now concedes that a renunciation made by Genevieve herself would have been effective. This point is well supported in New York law. *See* note 4 *infra*.

3. The effectiveness of a disclaimer of a power of appointment must be judged, in the first instance, by its validity under the law of the decedent's domicile. Treas. Reg. § 20.2041–3(d)(6). Both Genevieve and Daniel were New York residents when they died.

We are of the view, however, that New York courts would permit executors to renounce powers and other interests held by their testator at death to the same extent they permit disclaimers of legacies.[4] Outright ownership necessarily includes both a life estate and a general testamentary power of appointment.[5] It is not any more anomalous to permit retroactive renunciation of those rights when they stand alone than it is when they are merely part of the bundle of rights constituting a fee simple. Furthermore, since the principle of retroactive renunciation is that a disclaimer of an interest may be treated as relating back in time, it seems irrelevant to the efficacy of that principle that the interest has expired. It is agreed on all sides that *Hoenig* and *Dreyer* correctly stated the law of New York with respect to legacies; accordingly, we conclude that a New York court would find the disclaimer in the instant case effective.

■ Nor does § 2041 require a different result. That provision cannot be viewed in isolation from the rest of the Code. Section 2033 includes in the gross estate "the value of all property to the extent of the interest therein of the decedent," and the predecessor to § 2041 was first enacted because Congress was doubtful whether the forerunner of § 2033 would reach property as to which decedent did not hold fee simple title but merely a testamentary power of appointment. *United States v. Field*, 255 U.S. 257, 265, 41 S.Ct. 256, 65 L.Ed. 617 (1921). Moreover, the statute was amended in 1942 in response to *Helvering v. Safe Deposit & Trust Co.*, 316 U.S. 56, 59–62, 62 S.Ct. 925, 86 L.Ed. 1266 (1942), which held that only *exercised* powers were taxable. *See, e. g.* H.R.Rep.No. 2333, 77th Cong., 2d Sess. 160–61 (1942). *See generally* B. Bittker & L. Stone, *Federal Income Estate and Gift Taxation* 1093–96, 1240–48 (4th ed. 1972). The clear congressional purpose in enacting § 2041 was merely to ensure that, since the possessor of a general testamentary power of appointment may control the disposition of the property after his death as fully as the owner of a fee simple title, such powers are taxed in the same manner as outright ownership. Because, as *Hoenig* and *Dreyer* held, an executor's power to make a timely retroactive renunciation does not transgress the policy of § 2033, neither is it inconsistent with § 2041.[6]

■ Indeed, this result comports well with more general considerations of estate tax policy. So long as assets do not escape taxation entirely and no specific provision of the Code is contravened, taxpayers are generally permitted to arrange their affairs

---

4. No New York case specifically addresses an executor's renunciation of a general testamentary power of appointment held by the decedent at death. Nevertheless, it is true that interests in trusts may be renounced. *In re Matthiessen*, 175 Misc. 466, 23 N.Y.S.2d 802 (Orange County Sur.Ct. 1940). This principle includes powers of appointment. *In re Finucane's Will*, 199 Misc. 1069, 100 N.Y.S.2d 1005 (Monroe County Sur.Ct. 1950). Although these lower court decisions are not controlling on us, *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), we find them helpful in determining the issue of New York law confronting us.

5. We decline to engage in semantic quibbling as to whether a power is an attribute of ownership or a personal right. Clearly, it has elements of both. For most practical purposes, however, a general power of appointment approximates ownership. *American Law of Property* § 23.4 (A. J. Casner ed. 1952). This is especially true where, as here, a general testamentary power is coupled with a life estate

in the appointive property. *Cf.* I.R.C. § 2056 (b)(5).

6. The Commissioner has argued that a holding for the taxpayer in this case would read § 2041 out of the Code, because the executor of a donee of an unexercised general power would almost always disclaim, leaving in doubt only whether the disclaimer was timely. The timeliness limitation, however, is a substantial one. Transfers made before December 31, 1976 are subject, in addition to the timeliness requirements of local law, to the "reasonable time" limitation of Treas. Reg. § 20.2041–3(d)(6). And for transfers occurring after that date, I.R.C. § 2518(b)(2) requires, in the case of an adult, renunciation within nine months of the creation of the power.

Indeed, it is apparent that there can be effective posthumous disclaimers of powers only when the donee dies shortly after the donor, for otherwise the power will vest irrevocably through passage of time.

to minimize estate tax liability. *See, e. g., Estate of Charles W. Smith v. Commissioner of Internal Revenue,* 565 F.2d 455, 457–58 (7th Cir. 1977) (per curiam). Here, the trust agreement gave Genevieve the right to renounce her interest in the trust within 14 months of Daniel's death, and it specifically provided that her executors might exercise that right should she die before accepting the benefits of the trust. Since New York courts would uphold her executors' renunciation, and since the Trust A assets will be taxed as part of Daniel's estate, I.R.C. §§ 2036, 2038, we see no reason to deny effect to this provision of the trust agreement. Accordingly, the judgment of the Tax Court is affirmed.