EMILIO M. GARZA, Circuit Judge:
In this case, a decedent’s cousins (including a step-cousin) appeal the district court’s decision that the decedent’s children are entitled to his pension benefits. We reverse and render judgment in favor of the cousins.
I
Benny Brooks Estes (“Benny”), a former employee of Phillips Petroleum Company (“Phillips”), had a vested interest in Phillips’ Thrift Plan. Benny designated his father and mother — Onis B. Estes (“Onis”) and Lurline *296 H. Estes (“Lurline”) — as equal primary beneficiaries of his plan benefits, but did not list any contingent beneficiaries. Benny’s only sibling passed away in 1930. Also, Benny was divorced and had two children, Lisa Williams (“Lisa”) and Clifford Estes (“Clifford”) (jointly, “the Estes defendants”).
Benny died on November 14, 1992, and was survived by Lurline, Lisa, and Clifford (Onis predeceased Benny). At the time of Benny’s death, the plan proceeds consisted of about 6,881 shares of Phillips and about $4,725.50 in cash. The proceeds are currently worth about $322,112.[1]
Lurline became the “entitled beneficiary” of these proceeds.[2] However, Lurline died just three weeks after Benny. Lurline never received any of the proceeds or designated a beneficiary for them. Moreover, she did not have any surviving spouse, children, or parents; besides her surviving grandchildren (the Estes defendants), she had only a surviving sister, Annie Jane Layman (“Annie”).
Section 1(B) of article XII of the plan provides that
[ejach participant or entitled Beneficiary may designate a primary Beneficiary or Beneficiaries, and a contingent Beneficiary or Beneficiaries to receive distributions due upon the person’s death.... After receipt by the [Phillips’ Thrift Plan] Committee such Beneficiary designation shall take effect as of the date the form was signed by the Participant or entitled Beneficiary, whether or not he is living at the time of such receipt.... If no such designation is on file ... the Participant’s or entitled Beneficiary’s surviving spouse, surviving children in equal shares, surviving parents in equal shares, surviving sisters and brothers in equal shares, or his estate, in that order of priority, shall be conclusively deemed to be the Beneficiary designated to receive such benefits____ If any Beneficiary of an entitled Beneficiary, whether primary or contingent, dies before receiving the full distribution of any interest he has become entitled to, his estate shall receive the remaining distribution.
Given this language, Annie would presumably be “conclusively” entitled to receive the full proceeds of the plan once Lurline died. However, Annie passed away seven months after Lurline, and, like Lurline, Annie never received any plan proceeds before her death. Moreover, she left behind a will naming four equal beneficiaries — Barbara Ann Peeples (“Barbara”), Tom Fowler (“Tom”), C.W. Fowler (“C.W.”), and R.L. Layman (“R.L.”) (collectively, “the Layman defendants”). Barbara, Tom, and C.W. are Annie’s children from her first marriage, and Benny’s cousins; R.L. is Annie’s stepson from her second marriage, and Benny’s step-cousin. Under the plan, Annie’s estate would apparently receive the entire amount of the proceeds. Then, assuming Annie left a valid will, the proceeds would be distributed equally among the Layman defendants.
Several months after Benny expired, the probate court appointed Marcus Armstrong as independent executor of Lurline’s estate. Shortly after his appointment, Armstrong executed on behalf of Lurline’s estate a disclaimer of all of Lurline’s interest in the plan. The Phillips’ Thrift Plan Committee received a copy of the disclaimer within nine months of Benny’s death.
Section 4 of article XII of the plan states that
[i]n the event that a Beneficiary or an entitled Beneficiary signs and delivers to the Committee a written disclaimer of Plan benefits which satisfies the [Internal Revenue] Code’s requirements to be tax qualified, and such benefits, but for the disclaimer, would otherwise pass to such person as a result of the death of a Participant or entitled Beneficiary, the person executing such disclaimer of benefits shall *297 be deemed to have failed to survive the deceased Participant or entitled Beneficiary from whom he otherwise would have taken. For such disclaimer to be considered effective for purposes of the Plan, the disclaimer must be received by the Committee prior to the earlier of the date which is 9 months after the death of the Participant or entitled Beneficiary, or the date on which such person has requested any Plan transaction involving such Plan benefits. In the event that Plan benefits are distributed to the Beneficiary or entitled Beneficiary prior to the receipt of such disclaimer, pursuant to the other terms of the Plan, such distribution shall completely release and relieve [Phillips and others] on account of and to the extent of any payment made before receipt of the disclaimer.
There is no dispute that the disclaimer was written, signed, timely, and satisfied the applicable Code requirements. The parties also agree that, assuming the disclaimer was otherwise valid, Lurline would be deemed to have predeceased Benny and the plan’s proceeds would pass to the Estes defendants. The issue, then, is simply whether the disclaimer was valid. If it was, the Estes defendants should get the proceeds. If not, the Layman defendants should get them.
Because Phillips did not know whether the disclaimer was valid, it was unsure whether the Estes defendants or Layman defendants should receive the plan’s proceeds. Thus, R. Scott Nickel, the plan benefit administrator of the Phillips’ Thrift Plan, brought an inter-pleader action against Lurline’s estate, Annie’s estate (of which Barbara is independent executrix), Lisa, Clifford, Barbara, Tom Fowler, C.W. Fowler, and R.L. Layman. Lisa and Clifford then filed counterclaims against Nickel and the plan, and the Layman defendants filed counterclaims against the Estes defendants and Lurline’s estate.
The Estes defendants and Layman defendants both moved for summary judgment. The district court agreed with the Estes defendants, granting their motion for summary judgment and denying the Layman defendants’ motion. On appeal, the Layman defendants argue that the district court erred. Specifically, they assert that (1) the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. §§ 1001 et seq., preempts the state statutes authorizing the appointment of Armstrong as executor and permitting the disclaimer and (2) Armstrong could not execute a valid disclaimer under the plan because he was not a “Beneficiary or an entitled Beneficiary.” We examine these arguments in turn.
II
The Layman defendants contend that the district court erred in determining that ERISA does not preempt the state statutes that authorize the appointment of Armstrong as executor and the disclaimer that Armstrong made on behalf of Lurline’s estate. We review de novo a district court’s preemption analysis under ERISA. Hook v. Morrison Milling Co., 38 F.3d 776, 780 (5th Cir.1994).
ERISA states that it “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....” 29 U.S.C. § 1144(a). The ERISA preemption provision has a “broad scope” and “expansive sweep.” A state law “‘relate[s] to’ a covered employee benefit plan for purposes of [§ 1144(a) ] ‘if it has a connection with or reference to such a plan.’” District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 129, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983)). ERISA may preempt a related state law even if the state law is not specifically intended to regulate ERISA-covered plans. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). However, ERISA’s preemptive scope has limits. “Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law ‘relates to’ the plan.” Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.
The district court determined that state law was merely “peripheral” to the plan and thus would not be preempted under ERISA. *298 However, it looked to Texas Probate Code § 145 et seq. and Texas Probate Code § 37A to interpret the plan and decide that Armstrong’s disclaimer was valid. Texas Probate Code § 145 et seq. governs the appointment of independent administrators; the probate court appointed Armstrong independent executor pursuant to these provisions.[3] Texas Probate Code § 37A permits any personal representative of a decedent with court approval or independent executor of a decedent without prior court approval to disclaim property that the decedent would be entitled to receive as a beneficiary. The statute goes on to provide that the disclaimer will relate back to the death of the person making the decedent a beneficiary and will ensure that the property passes as if the later decedent (i.e., the person on whose behalf the disclaimer is made) had predeceased the earlier decedent (i.e., the person making the later decedent a beneficiary).
Putting aside the merits of the district court’s preemption analysis, we determine that the district court erred by reaching the preemption issue in the first place. As the Estes defendants concede in their brief, we can decide the validity of the disclaimer without resort to state law. Indeed, we can resolve the validity of the disclaimer without going beyond the terms of the plan itself. As the Sixth Circuit has noted, “ERISA plans are to be administered according to their controlling documents.... [I]f the designation on file controls, administrators and courts need look no further than the plan documents to determine the beneficiary....” McMillan v. Parrott, 913 F.2d 310, 312 (6th Cir.1990); see also MacLean, 831 F.2d at 728 (finding that state testamentary law “interfere[d] with the administration of the Plan and violate[d] its terms” since the plan provided “a valid method for determining the beneficiary”).
In short, we determine that the district court did not need to go beyond the plain language of the plan to resolve the parties’ dispute. Thus, the district court erred not only in looking to state law but in conducting a preemption analysis at all.
Ill
The Layman defendants next maintain that Armstrong could not execute a valid disclaimer under the plan because he was not a “Beneficiary or an entitled Beneficiary.” We review de novo questions of law, such as whether an ERISA plan’s terms are clear and, if they are, how those terms should be interpreted. Sunbeam-Oster Co. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst, 102 F.3d 1368, 1373 (5th Cir.1996). We review for clear error findings of fact, such as the intent of parties regarding an ERISA plan. Id.
The plan states that “[i]n the event that a Beneficiary or an entitled Beneficiary signs and delivers to the Committee a written disclaimer of Plan benefits which satisfies the [Internal Revenue] Code’s requirements to be tax qualified, and such benefits, but for the disclaimer, would otherwise pass to such a person as a result of the death of a Participant or entitled Beneficiary,” the disclaimer is valid. The question is whether the reference to “Beneficiary” encompasses a personal representative, executor, or administrator who disclaims on behalf of the beneficiary.
In answering this question, we look first to the plain meaning of the plan. See Lockhart v. United Mine Workers of Am.1974 Pension Trust, 5 F.3d 74, 78 (4th Cir.1993) (stating that an “award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself’). Clearly, the plan says nothing about anyone disclaiming on behalf of the beneficiary or entitled beneficiary. It merely states that “a Beneficiary or an entitled Beneficiary [can disclaim by] signing] and delivering] to the Committee a written disclaimer.” Since Armstrong, rather than Lurline, signed and delivered to the Committee a written disclaimer, that disclaimer is invalid under the plan. See Rodrigue v. Western & So. Life *299 Ins. Co., 948 F.2d 969, 971 (5th Cir.1991) (ruling that court cannot alter plain meaning of plan); see also Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 57 (4th Cir.1992) (noting that courts may not disregard plain meaning of plan) cert. denied, 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993); Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 30 (1st Cir.1991) (holding that employees were entitled to plan benefits under plain meaning of plan).
Our interpretation of “Beneficiary or an entitled Beneficiary” as meaning just the beneficiary or entitled beneficiary himself (as opposed to the beneficiary/entitled beneficiary himself or the personal representative of a deceased beneficiary/entitled beneficiary) is bolstered by looking at the words immediately preceding and following the “sign and deliver” language. The relevant sentence reads: “In the event that a Beneficiary or an entitled Beneficiary signs and delivers to the Committee a written disclaimer of Plan benefits which satisfies the Code’s requirements to be tax qualified, and such benefits, but for the disclaimer, would otherwise pass to such person as a result of the death of a Participant or entitled Beneficiary, the person executing such disclaimer of benefits shall be deemed to have failed to survive the deceased Participant or entitled Beneficiary from whom he otherwise would have taken” (emphasis added). Like “Beneficiary” or “entitled Beneficiary,” the phrases “such person” and “the person executing such disclaimer” in this sentence cannot refer to a personal representative of the beneficiary or entitled beneficiary, but only to the beneficiary or entitled beneficiary himself. In short, “Beneficiary or an entitled Beneficiary” can mean nothing more than beneficiary or entitled beneficiary.
In response, the Estes defendants emphasize the clause following “which” in the sentence “... a Beneficiary or an entitled Beneficiary signs and delivers to the Committee a written disclaimer of Plan benefits which satisfies the Code’s requirements to be tax qualified ____” They contend that various Internal Revenue Service (“Service”) regulations and private letter rulings as well as Tax Court decisions specifically permit a personal representative to disclaim on behalf of a decedent. This, though, is irrelevant. The plan drafters used “which” in the quoted sentence to add a clause restricting the meaning of the antecedent clause. See Oxford English Dictionary 225 (2d ed.1989) (defining “which” as pronoun “[ijntroducing a clause defining or restricting the antecedent and thus completing the sense” and offering examples of this usage such as “[tjhis is the path which leads to death”). In other words, the clause following “which” is an additional requirement that must be met before a disclaimer is valid. The Estes defendants’ interpretation of the sentence would require us to construe “which” as “or”; they want us to read the sentence to mean either that a beneficiary signs and delivers a written disclaimer or that a beneficiary meets the Code’s requirements for a qualified disclaimer (one of which arguably permits a personal representative to disclaim on behalf of a decedent). We decline to adopt this strained construction of the plan. The quoted sentence clearly requires a beneficiary to sign and deliver a written disclaimer that also meets the Code’s requirements for being tax qualified.
In addition, even if the Estes defendants could show that the plan permits executors to disclaim on behalf of the estates of dead beneficiaries, such a disclaimer would still be invalid. Under the plan, Lurline ceased being the beneficiary of the proceeds the instant she died, and the proceeds never passed to her estate. As soon as Lurline expired, the plan designated Annie — rather than Lurline’s estate — as beneficiary.
Article XII(1)(A) of the plan states that [s]ubject to Paragraph B of this Section, upon the death of a Participant, or the death of a Beneficiary of a Participant who has become entitled to an interest in the Plan due to a Participant’s death (entitled Beneficiary), prior to the Valuation Date upon which complete distribution of his entire account under the Plan occurs, the remaining full balance of his account shall be payable to his designated Beneficiary....
Paragraph B then provides in pertinent part that
*300 [i]f no [Beneficiary] designation is on file ... the Participant’s or entitled Beneficiary’s ... surviving sisters and brothers in equal shares, or his estate, in that order of priority, shall be conclusively deemed to be the Beneficiary designated to receive such benefits____ If any Beneficiary of an entitled Beneficiary, whether primary or contingent, dies before receiving the full distribution of any interest he has become entitled to, his estate shall receive the remaining distribution.
After Benny’s death, Lurline became the entitled beneficiary of the proceeds. Upon Lurline’s death, the proceeds became payable to her designated beneficiary. Since Lurline did not designate a beneficiary, Annie (Lurline’s only sibling) — not Lurline’s estate — became the beneficiary of the proceeds under the plan. Upon Annie’s death, Annie’s estate received the proceeds since Annie was the beneficiary of Lurline, an entitled beneficiary. Thus, the proceeds should now pass under state law, presumably pursuant to Annie’s will.[4] Accordingly, since the proceeds never passed to Lurline’s estate, Armstrong — in his capacity as the executor of Lurline’s estate — could not have disclaimed them. He had no authority over the proceeds at all.
The Estes defendants dispute this conclusion by pointing to a Second Circuit opinion, Rolin v. Commissioner of Internal Revenue, 588 F.2d 368 (2d Cir.1978). Apparently, the Estes defendants believe that Rolin stands for the proposition that an executor can disclaim an interest on behalf of a decedent that the decedent originally possessed but which did not pass to the decedent’s estate. In particular, they rely on the court’s statement that “since the principle of retroactive renum ciation is that a disclaimer of an interest may be treated as relating back in time, it seems irrelevant to the efficacy of that principle that the interest has expired.” Id. at 370.
In Rolin, Daniel established a trust which, upon his death, would be divided into “Trust A” and “Trust B.” His wife, Genevieve, would receive income from the trusts for life. In addition, Genevieve obtained the right to invade the corpus of Trust A during her life as well as general testamentary power of appointment over Trust A’s assets. If Genevieve died without having exercised her power of appointment, Trust A would merge into Trust B and the assets would be distributed to the Rolins’ issue. Subsequently, Daniel passed away and, four months later, so did Genevieve. Genevieve never received income from either trust and never used her power of appointment. Genevieve’s executors then tried to renounce Genevieve’s interest in the merged trust. The Service opposed this attempt, arguing that the executors could not disclaim Genevieve’s power of appointment because it expired at her death. In deciding the dispute, the court noted that, under New York law, an executor could disclaim a legacy left to a decedent and the disclaimer would relate back to the date of the gift and prevent title from ever divesting. The court then held that, since an executor could disclaim a legacy, there was no reason why he could not also disclaim a power of appointment, even if that power had expired. The court reasoned that a power of appointment was just one right in the bundle of rights constituting a fee simple, and if an executor could disclaim the whole bundle of rights, he could also disclaim one of the rights.
Rolin is not really on point here. First, since no ERISA plan was involved in Rolin, the court relied heavily on New York wills and trust law for its decision. However, we may not follow state law in this case because such law would “relate” to the plan and thus be preempted (though, of course, we decide that state law governs the passage of the proceeds from Annie’s estate). Second, the trust agreement in Rolin specifically provided that Genevieve’s executors could renounce her interest in the trust should she die before accepting trust benefits. Here, the plan says nothing about a personal representative, executor, or administrator disclaiming on be *301 half of a decedent. Third, while the power of appointment may have expired at Genevieve’s death, at least some interest from the trust passed to Genevieve’s estate. In other words, some rights from the bundle of rights over the trust that Daniel bequeathed to Genevieve passed to her estate. Given the passage of some of the trust rights, the court held that Genevieve’s executors could disclaim all of these rights. In our case, though, none of the rights Lurline had over the proceeds passed to her estate. They all went to Annie and then Annie’s estate. Fourth, even if we were to construe Rolin as adopting the general rule that an executor can disclaim an interest on behalf of a decedent that the decedent originally possessed but which did not pass to the decedent’s estate (which we do not), it would not matter here. The plan states that plan benefits “but for the disclaimer, [must] otherwise pass to [the entitled Beneficiary] as a result of .the death of a Participant....” But if Armstrong had not disclaimed the proceeds, the entitled beneficiary would not have been Lurline or Lurline’s estate but, rather, Annie or Annie’s estate.[5] Under the plan, Annie received the proceeds upon Lurline’s death (i.e., Annie became the entitled beneficiary) and, after Annie expired, the proceeds passed to Annie’s estate.
Therefore, we determine that Armstrong’s disclaimer was invalid and that the proceeds must pass according to the plan. This means that Annie received the proceeds upon Lurline’s death, and that, after Annie expired, the proceeds passed to Annie’s estate. Accordingly, the proceeds must now go to Barbara, the independent executrix of Annie’s estate, for distribution under the terms of Annie’s will or otherwise.[6]
IV
Lastly, the Layman defendants challenge the district court’s order that they pay the plaintiffs $4,461.54 in attorneys’ fees and costs. Apparently, the district court awarded this amount to the plaintiffs because they were merely the stakeholders in the litigation and because the Layman defendants were “the unsuccessful defendants in this case.” We review an award of attorneys’ fees and costs for abuse of discretion. Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, So. Council of Indus. Workers, Local Union No. 2713, 103 F.3d 449, 453 (5th Cir.1997).
'We agree with the district court that the plaintiffs should not bear unnecessary costs and attorneys’ fees in this litigation, and that the plaintiffs should be able to recover costs and fees from the unsuccessful defendants in this case. Thus, we will award the plaintiffs $4,461.54 in costs and fees against the Estes defendants.
V
For the foregoing reasons, we REVERSE the judgment of the district court and RENDER judgment in favor of the Layman defendants. Moreover, we ORDER that the plaintiffs recover $4,461.54 in costs and fees against the Estes defendants.

. On July 28, 1997, the closing price for a share of Phillips on the New York Stock Exchange was $46,125. We calculate the value of the proceeds using this closing price.

. Under the plan, an "entitled Beneficiary” is "a Beneficiary who has become entitled to an interest in the Plan due to a Participant's death.” A "Beneficiary” is “a natural person, or a legal entity, estate or corporation, designated to receive any benefit under the Plan in the event of the Participant’s or entitled Beneficiary's death." A "Participant" is the person who had the original interest in the plan, in this case Benny.

. “Independent executor" means the personal representative of an estate under independent administration. Tex Prob.Code Ann. § 3(q). "Independent executor” includes the term "independent administrator." Id.

. ERISA does not preempt state law governing passage of the proceeds from Annie’s estate to the beneficiaries of her will because the plan does not discuss how the proceeds should pass from a beneficiary’s estate. In other words, once the proceeds pass to Annie's estate, the plan ceases to designate a beneficiary; hence, state law that determines who takes the proceeds under Annie’s will does not relate to the plan and is not preempted.

. Armstrong executed the disclaimer before Annie expired but did not file it until after her death.

. We emphasize that we do not decide in this appeal whether Annie’s will is válid or, if it is, how the proceeds should be distributed to the will’s beneficiaries. We simply hold that the proceeds passed to Annie’s estate under the plan and thus should now be given to Barbara for independent administration.