REYNALDO G. GARZA, Circuit Judge,
dissenting:
The majority states that the district court erred by conducting a preemption analysis and that the case turns on whether Lurline Estes’ executor, Marcus Armstrong, can validly disclaim her right to proceeds from the Phillips Thrift Plan within nine months of Benny’s death, as was Lurline’s right under the terms of the plan. The majority believes that Armstrong was not a beneficiary under the plan, and therefore, did not have the right to validly disclaim the proceeds from the plan. Accordingly, the majority has voted to reverse the decision of the district court in this matter. While I concur with the first part of this line of reasoning, I disagree with the majority’s conclusion that Armstrong does not have the authority to dis *302 claim. I therefore respectfully dissent, for the following reasons.
As the majority points out, the parties agree that the disclaimer satisfied the applicable Code requirements, and if the disclaimer is otherwise valid, Lurline would be deemed to have predeceased Benny Brooks Estes (as did Onis, Benny’s father). If the disclaimer is valid and Lurline is considered to have predeceased Benny, the proceeds from the plan will pass to Benny’s children, the Estes defendants. If the disclaimer is not valid, Benny’s cousins, the Layman defendants, get the proceeds.
The majority states that proper interpretation of the “plain language” of the plan can lead us to proper resolution of this dispute, and I agree. The key issue is whether the reference to “Beneficiary or an entitled Beneficiary,” as listed in the plan, includes a personal representative or executor who disclaims on behalf of the beneficiary. The majority believes that the phrase “Beneficiary or an entitled Beneficiary” should be strictly and literally construed, and therefore, the phrase does not encompass executors or representatives (such as Armstrong in this ease). Under this interpretation, Armstrong’s disclaimer is invalid, and the Layman defendants should take the proceeds of the plan rather than the Estes defendants.
I believe the majority’s interpretation of the phrase “Beneficiary or an entitled Beneficiary” is overly narrow. First of all, while it is true that we must look to the plain meaning of the terms within the plan for guidance, the cases cited by the majority state or imply that clarity and a lack of ambiguity are important factors in proper interpretation of the terms in a plan. Specifically, in the cases cited where benefits are denied, the terms are more sharply restrictive and obvious in their meaning than those in this case. For example, in Rodrigue v. Western and So. Life Ins. Co., this Circuit held that Rodrigue’s claim under a state equitable estoppel theory was invalid because he was asking for payment for medical procedures explicitly excluded from the plan. Rodrigue v. Western and So. Life Ins. Co., 948 F.2d 969, 970 (5th Cir.1991) (Rodrigue had kidney stones and the plan stated it would not pay for treatment for ailments of the genitourinary system). This case is distinguishable from the instant case because Rodrigue was asking for a treatment explicitly forbidden in the plan, there were no questions of grammar or definition of a particular word involved in Rodrigue, and the other cases were similarly specific in what was or wasn’t allowed under their plans. See also Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 57 (4th Cir.1992), cert. denied 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993); Lockhart v. United Mine Workers of America 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir.1993). This specificity is not in place here.
■ A plain meaning interpretation of “beneficiary” will include agents and representatives of beneficiary, because such interpretation is commonplace in the law. Postmortem disclaimers by executors are quite common and hardly unforeseeable deviations from the terms of the plan (which, as stated, provides for disclaimers for quite some time after the death of the participant or beneficiary). For example, a beneficiary’s legal representative can disclaim an interest just as the beneficiary herself can, under the qualified disclaimer definition as set forth in Section 2518(b) of the Internal Revenue Code of 1986. 26 C.F.R. § 25.2518-2(b)(1)(1996). An interpretation of the Plan which encompasses such disclaimers is not a departure from standard plain language interpretations of contract and labor law, and would not undermine the integrity of the ERISA plan.
Also, the Layman defendants cited no case law for the proposition that a beneficiary’s legal representative or executor cannot disclaim an interest in the plan. In fact, there is ample legal support for the contrary. For example, the Rolin case cited and distinguished by the majority stands for the proposition that an executor stands in the shoes of a testator beneficiary for the purposes of disclaimer. Estate of Rolin v. Commissioner of Internal Revenue, 68 T.C. 919, 1977 WL 3714 (1977), aff'd 588 F.2d 368 (2d Cir.1978); see also Estate of Allen v. Commissioner of Internal Revenue, 56 T.C.M. (CCH) 1494 (1989). While the majority distinguishes the Rolin case from the instant case due to the *303 difference in subject matter, I believe that the relevant point of Rolin is the idea that executors have the authority to disclaim property which was to be given to the testator beneficiary, and that the time-period for disclaimers may relate back and act retroactively. I believe that a plain meaning interpretation of beneficiary incorporates the Rolin approach with regard to executors. The fact that Texas, as well as many other states, considers executors to have certain powers of disclaimer further bolsters the position that the drafters would assume that beneficiary would encompass executors, in terms of disclaimer and all other powers listed for participants and beneficiaries in the plan, and most specifically, regarding the right to wait up to nine months after the death of Benny to disclaim. TEX. PROB. CODE ANN. § 145, et seq. (Vernon 1980 & Supp.1997); TEX. PROB. CODE ANN. § 37A (Vernon 1980 & Supp.1997).
Article XII, Section 4 of the Plan Document incorporates the requirements for disclaimer from the Internal Revenue Code for the purposes of describing the disclaimer requirements for the plan with the following statement.
In the event that a Beneficiary or an entitled Beneficiary signs and delivers to the committee a written disclaimer of Plan benefits which satisfies the [Internal Revenue] Code’s requirements to be tax qualified, and such benefits but for the disclaimer, would otherwise pass to such person as a result of the death of a Participant or entitled Beneficiary, the person executing such disclaimer of benefits shall be deemed to have failed to survive the deceased Participant or entitled Beneficiary from whom he otherwise would have taken.
I believe the majority’s concern over the implications of the word “which” in this section of the plan is misplaced and serves to unnecessarily complicate the issue. A plain language reading of this section, consistent with the plain legal usage of the word “beneficiary” leads me to believe that the reference to the Internal Revenue Code is there for the purpose of aiding in the definition of the requirements of an appropriate disclaimer, a definition which (in both plain usage and the Tax Code) includes executors. The “which” is there to modify the previous phrase, and serves to point toward proper definition of what beneficiary will encompass. It does not create and “either/or” situation or an excessively limiting construction of the phrase. This term is therefore far from fatal to the Estes defendants.
Moreover, the plan does not use the phrase “Beneficiary or an entitled Beneficiary” exclusively in describing who can execute disclaimer. The plan refers to “person executing such disclaimer.” I believe this further undermines the contention that the drafters intended a very strict and literal definition of beneficiary, one which would not encompass other persons such as executors or representatives. If that were the intent of the drafters, they would presumably would have consistently used the allegedly limiting phrases throughout this section of the plan.
In addition, I believe that the Estes defendants are the appropriate recipients of the proceeds from the Plan for the simple reason that I find it difficult to believe that Benny Brooks Estes would want his hard-earned money to go to someone other than his immediate family. I suspect that Benny would turn over in his grave at the thought of such a distribution. Also, it has been stated that one of the primary goals of ERISA is to provide support for an employee and his family. Cartledge v. Miller, 457 F.Supp. 1146, 1156 (S.D.N.Y.1978); In re Masters, 73 B.R. 796, 799 (Bankr.D.Or.1987). A distribution of plan proceeds which favors the cousins of Benny Brooks Estes over his own children is not only likely to be exactly the opposite of what Benny would have wanted, but is also not in keeping with the goals of ERISA.
Further, the majority’s belief that the Layman defendants should receive the proceeds from the plan because that would be the presumed intent of the drafters of the plan rings hollow, given that Phillips was the party that filed an interpleader action to clarify who rightfully should receive the proceeds. I find it unlikely that Phillips would have filed this action and hold up distribution of the proceeds if it was so obvious that the^ proper distribution under the plan would be *304 to the Layman defendants. Last, the majority’s assertion that a distribution to the Estes defendants is a strained construction of the plan seems a bit odd given that it is the majority which seems to be straining to find a way to take the proceeds away from the parties that Benny would most likely want to have provided for. A decision in favor of the Estes defendants, aside from being the more just result, makes more sense given the terms of the plan and the actions of Phillips.
For the foregoing reasons, I respectfully dissent, and accordingly would affirm the decision of the district court.