United States Court of Appeals,

Fifth Circuit.

Nos. 96-10797 and 96-10979.

R. Scott NICKEL, as Plan Benefit Administrator of the Thrift Plan of Phillips Petroleum Company; Thrift Plan of Phillips Petroleum Company, Plaintiffs-Counter Defendants-Appellees,

v.

Estate of Lurline ESTES, Defendant-Cross Defendant-Appellee,

Estate of Annie J. Layman, Defendant-Counter Claimant-Appellant,

Clifford D. Estes; Lisa C. Williams, Defendants-Cross Defendants-Appellees,

Tom Fowler; C.W. Fowler; R.L. Layman; Barbara Peeples, Defendants-Counter Claimants-Appellants.

Sept. 22, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, SMITH and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this case, a decedent's cousins (including a step-cousin) appeal the district court's decision that the decedent's children are entitled to his pension benefits. We reverse and render judgment in favor of the cousins.

I

Benny Brooks Estes ("Benny"), a former employee of Phillips Petroleum Company ("Phillips"), had a vested interest in Phillips' Thrift Plan. Benny designated his father and mother—Onis B. Estes ("Onis") and Lurline H. Estes ("Lurline")—as equal primary beneficiaries of his plan benefits, but did not list any contingent

1

beneficiaries. Benny's only sibling passed away in 1930. Also, Benny was divorced and had two children, Lisa Williams ("Lisa") and Clifford Estes ("Clifford") (jointly, "the Estes defendants").

Benny died on November 14, 1992, and was survived by Lurline, Lisa, and Clifford (Onis predeceased Benny). At the time of Benny's death, the plan proceeds consisted of about 6,881 shares of Phillips and about $4,725.50 in cash. The proceeds are currently worth about $322,112.[1]

Lurline became the "entitled beneficiary" of these proceeds.[2] However, Lurline died just three weeks after Benny. Lurline never received any of the proceeds or designated a beneficiary for them. Moreover, she did not have any surviving spouse, children, or parents; besides her surviving grandchildren (the Estes defendants), she had only a surviving sister, Annie Jane Layman ("Annie").

Section 1(B) of article XII of the plan provides that

[e]ach participant or entitled Beneficiary may designate a primary Beneficiary or Beneficiaries, and a contingent Beneficiary or Beneficiaries to receive distributions due upon the person's death.... After receipt by the [Phillips' Thrift Plan] Committee such Beneficiary designation shall take effect as of the date the form was signed by the Participant or entitled Beneficiary, whether or not he is living at the time

---

[1]On July 28, 1997, the closing price for a share of Phillips on the New York Stock Exchange was $46.125. We calculate the value of the proceeds using this closing price.

[2]Under the plan, an "entitled Beneficiary" is "a Beneficiary who has become entitled to an interest in the Plan due to a Participant's death." A "Beneficiary" is "a natural person, or a legal entity, estate or corporation, designated to receive any benefit under the Plan in the event of the Participant's or entitled Beneficiary's death." A "Participant" is the person who had the original interest in the plan, in this case Benny.

of such receipt.... If no such designation is on file ... the Participant's or entitled Beneficiary's surviving spouse, surviving children in equal shares, surviving parents in equal shares, surviving sisters and brothers in equal shares, or his estate, in that order of priority, shall be conclusively deemed to be the Beneficiary designated to receive such benefits.... If any Beneficiary of an entitled Beneficiary, whether primary or contingent, dies before receiving the full distribution of any interest he has become entitled to, his estate shall receive the remaining distribution.

Given this language, Annie would presumably be "conclusively" entitled to receive the full proceeds of the plan once Lurline died. However, Annie passed away seven months after Lurline, and, like Lurline, Annie never received any plan proceeds before her death. Moreover, she left behind a will naming four equal beneficiaries—Barbara Ann Peeples ("Barbara"), Tom Fowler ("Tom"), C.W. Fowler ("C.W."), and R.L. Layman ("R.L.") (collectively, "the Layman defendants"). Barbara, Tom, and C.W. are Annie's children from her first marriage, and Benny's cousins; R.L. is Annie's stepson from her second marriage, and Benny's step-cousin. Under the plan, Annie's estate would apparently receive the entire amount of the proceeds. Then, assuming Annie left a valid will, the proceeds would be distributed equally among the Layman defendants.

Several months after Benny expired, the probate court appointed Marcus Armstrong as independent executor of Lurline's estate. Shortly after his appointment, Armstrong executed on behalf of Lurline's estate a disclaimer of all of Lurline's interest in the plan. The Phillips' Thrift Plan Committee received a copy of the disclaimer within nine months of Benny's death.

Section 4 of article XII of the plan states that

[i]n the event that a Beneficiary or an entitled Beneficiary

3

signs and delivers to the Committee a written disclaimer of Plan benefits which satisfies the [Internal Revenue] Code's requirements to be tax qualified, and such benefits, but for the disclaimer, would otherwise pass to such person as a result of the death of a Participant or entitled Beneficiary, the person executing such disclaimer of benefits shall be deemed to have failed to survive the deceased Participant or entitled Beneficiary from whom he otherwise would have taken. For such disclaimer to be considered effective for purposes of the Plan, the disclaimer must be received by the Committee prior to the earlier of the date which is 9 months after the death of the Participant or entitled Beneficiary, or the date on which such person has requested any Plan transaction involving such Plan benefits. In the event that Plan benefits are distributed to the Beneficiary or entitled Beneficiary prior to the receipt of such disclaimer, pursuant to the other terms of the Plan, such distribution shall completely release and relieve [Phillips and others] on account of and to the extent of any payment made before receipt of the disclaimer.

There is no dispute that the disclaimer was written, signed, timely, and satisfied the applicable Code requirements. The parties also agree that, assuming the disclaimer was otherwise valid, Lurline would be deemed to have predeceased Benny and the plan's proceeds would pass to the Estes defendants. The issue, then, is simply whether the disclaimer was valid. If it was, the Estes defendants should get the proceeds. If not, the Layman defendants should get them.

Because Phillips did not know whether the disclaimer was valid, it was unsure whether the Estes defendants or Layman defendants should receive the plan's proceeds. Thus, R. Scott Nickel, the plan benefit administrator of the Phillips' Thrift Plan, brought an interpleader action against Lurline's estate, Annie's estate (of which Barbara is independent executrix), Lisa, Clifford, Barbara, Tom Fowler, C.W. Fowler, and R.L. Layman. Lisa and Clifford then filed counterclaims against Nickel and the plan,

4

and the Layman defendants filed counterclaims against the Estes defendants and Lurline's estate.

The Estes defendants and Layman defendants both moved for summary judgment. The district court agreed with the Estes defendants, granting their motion for summary judgment and denying the Layman defendants' motion. On appeal, the Layman defendants argue that the district court erred. Specifically, they assert that (1) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.,* preempts the state statutes authorizing the appointment of Armstrong as executor and permitting the disclaimer and (2) Armstrong could not execute a valid disclaimer under the plan because he was not a "Beneficiary or an entitled Beneficiary." We examine these arguments in turn.

## II

The Layman defendants contend that the district court erred in determining that ERISA does not preempt the state statutes that authorize the appointment of Armstrong as executor and the disclaimer that Armstrong made on behalf of Lurline's estate. We review *de novo* a district court's preemption analysis under ERISA. *Hook v. Morrison Milling Co.,* 38 F.3d 776, 780 (5th Cir.1994).

ERISA states that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). The ERISA preemption provision has a "broad scope" and "expansive sweep." A state law " "relate[s] to' a covered employee benefit plan for purposes of [§ 1144(a) ] "if it has a connection with or reference to such a plan.' "

5

*District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 129, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983)). ERISA may preempt a related state law even if the state law is not specifically intended to regulate ERISA-covered plans. *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). However, ERISA's preemptive scope has limits. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

The district court determined that state law was merely "peripheral" to the plan and thus would not be preempted under ERISA. However, it looked to Texas Probate Code § 145 *et seq.* and Texas Probate Code § 37A to interpret the plan and decide that Armstrong's disclaimer was valid. Texas Probate Code § 145 *et seq.* governs the appointment of independent administrators; the probate court appointed Armstrong independent executor pursuant to these provisions.[3] Texas Probate Code § 37A permits any personal representative of a decedent with court approval or independent executor of a decedent without prior court approval to disclaim property that the decedent would be entitled to receive as a beneficiary. The statute goes on to provide that the disclaimer

---

[3]"Independent executor" means the personal representative of an estate under independent administration. TEX. PROB.CODE ANN. § 3(q). "Independent executor" includes the term "independent administrator." *Id.*

will relate back to the death of the person making the decedent a beneficiary and will ensure that the property passes as if the later decedent (i.e., the person on whose behalf the disclaimer is made) had predeceased the earlier decedent (i.e., the person making the later decedent a beneficiary).

Putting aside the merits of the district court's preemption analysis, we determine that the district court erred by reaching the preemption issue in the first place. As the Estes defendants concede in their brief, we can decide the validity of the disclaimer without resort to state law. Indeed, we can resolve the validity of the disclaimer without going beyond the terms of the plan itself. As the Sixth Circuit has noted, "ERISA plans are to be administered according to their controlling documents.... [I]f the designation on file controls, administrators and courts need look no further than the plan documents to determine the beneficiary...." *McMillan v. Parrott,* 913 F.2d 310, 312 (6th Cir.1990); *see also MacLean,* 831 F.2d at 728 (finding that state testamentary law "interfere[d] with the administration of the Plan and violate[d] its terms" since the plan provided "a valid method for determining the beneficiary").

In short, we determine that the district court did not need to go beyond the plain language of the plan to resolve the parties' dispute. Thus, the district court erred not only in looking to state law but in conducting a preemption analysis at all.

## III

The Layman defendants next maintain that Armstrong could not

7

execute a valid disclaimer under the plan because he was not a "Beneficiary or an entitled Beneficiary." We review *de novo* questions of law, such as whether an ERISA plan's terms are clear and, if they are, how those terms should be interpreted. *Sunbeam-Oster Co. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst,* 102 F.3d 1368, 1373 (5th Cir.1996). We review for clear error findings of fact, such as the intent of parties regarding an ERISA plan. *Id.*

The plan states that "[i]n the event that a Beneficiary or an entitled Beneficiary signs and delivers to the Committee a written disclaimer of Plan benefits which satisfies the [Internal Revenue] Code's requirements to be tax qualified, and such benefits, but for the disclaimer, would otherwise pass to such a person as a result of the death of a Participant or entitled Beneficiary," the disclaimer is valid. The question is whether the reference to "Beneficiary" encompasses a personal representative, executor, or administrator who disclaims on behalf of the beneficiary.

In answering this question, we look first to the plain meaning of the plan. *See Lockhart v. United Mine Workers of Am.1974 Pension Trust,* 5 F.3d 74, 78 (4th Cir.1993) (stating that an "award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself"). Clearly, the plan says nothing about anyone disclaiming on behalf of the beneficiary or entitled beneficiary. It merely states that "a Beneficiary or an entitled Beneficiary [can disclaim by] sign[ing] and deliver[ing] to the Committee a written disclaimer." Since

8

Armstrong, rather than Lurline, signed and delivered to the Committee a written disclaimer, that disclaimer is invalid under the plan. *See Rodrigue v. Western & So. Life Ins. Co.,* 948 F.2d 969, 971 (5th Cir.1991) (ruling that court cannot alter plain meaning of plan); *see also Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 57 (4th Cir.1992) (noting that courts may not disregard plain meaning of plan) *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993); *Bellino v. Schlumberger Technologies, Inc.,* 944 F.2d 26, 30 (1st Cir.1991) (holding that employees were entitled to plan benefits under plain meaning of plan).

Our interpretation of "Beneficiary or an entitled Beneficiary" as meaning just the beneficiary or entitled beneficiary himself (as opposed to the beneficiary/entitled beneficiary himself *or* the personal representative of a deceased beneficiary/entitled beneficiary) is bolstered by looking at the words immediately preceding and following the "sign and deliver" language. The relevant sentence reads: "In the event that *a Beneficiary or an entitled Beneficiary* signs and delivers to the Committee a written disclaimer of Plan benefits which satisfies the Code's requirements to be tax qualified, and such benefits, but for the disclaimer, would otherwise pass *to such person* as a result of the death of a Participant or entitled Beneficiary, *the person executing such disclaimer* of benefits shall be deemed to have failed to survive the deceased Participant or entitled Beneficiary from whom he otherwise would have taken" (emphasis added). Like "Beneficiary"

9

or "entitled Beneficiary," the phrases "such person" and "the person executing such disclaimer" in this sentence cannot refer to a personal representative of the beneficiary or entitled beneficiary, but only to the beneficiary or entitled beneficiary himself.  In short, "Beneficiary or an entitled Beneficiary" can mean nothing more than beneficiary or entitled beneficiary.

In response, the Estes defendants emphasize the clause following "which" in the sentence "... a Beneficiary or an entitled Beneficiary signs and delivers to the Committee a written disclaimer of Plan benefits *which satisfies the Code's requirements to be tax qualified* ...."  They contend that various Internal Revenue Service ("Service") regulations and private letter rulings as well as Tax Court decisions specifically permit a personal representative to disclaim on behalf of a decedent.  This, though, is irrelevant.  The plan drafters used "which" in the quoted sentence to add a clause restricting the meaning of the antecedent clause.  *See* OXFORD ENGLISH DICTIONARY 225 (2d ed.1989) (defining "which" as pronoun "[i]ntroducing a clause defining or restricting the antecedent and thus completing the sense" and offering examples of this usage such as "[t]his is the path which leads to death").  In other words, the clause following "which" is an additional requirement that must be met before a disclaimer is valid.  The Estes defendants' interpretation of the sentence would require us to construe "which" as "or";  they want us to read the sentence to mean either that a beneficiary signs and delivers a written disclaimer *or* that a beneficiary meets the Code's requirements for

10

a qualified disclaimer (one of which arguably permits a personal representative to disclaim on behalf of a decedent).  We decline to adopt this strained construction of the plan.  The quoted sentence clearly requires a beneficiary to sign and deliver a written disclaimer that *also* meets the Code's requirements for being tax qualified.

In addition, even if the Estes defendants could show that the plan permits executors to disclaim on behalf of the estates of dead beneficiaries, such a disclaimer would still be invalid.  Under the plan, Lurline ceased being the beneficiary of the proceeds the instant she died, and the proceeds never passed to her estate.  As soon as Lurline expired, the plan designated Annie—rather than Lurline's estate—as beneficiary.

Article XII(1)(A) of the plan states that

[s]ubject to Paragraph B of this Section, upon the death of a Participant, or the death of a Beneficiary of a Participant who has become entitled to an interest in the Plan due to a Participant's death (entitled Beneficiary), prior to the Valuation Date upon which complete distribution of his entire account under the Plan occurs, the remaining full balance of his account shall be payable to his designated Beneficiary....

Paragraph B then provides in pertinent part that

[i]f no [Beneficiary] designation is on file ... the Participant's or entitled Beneficiary's ... surviving sisters and brothers in equal shares, or his estate, in that order of priority, shall be conclusively deemed to be the Beneficiary designated to receive such benefits....  If any Beneficiary of an entitled Beneficiary, whether primary or contingent, dies before receiving the full distribution of any interest he has become entitled to, his estate shall receive the remaining distribution.

After Benny's death, Lurline became the entitled beneficiary of the proceeds.  Upon Lurline's death, the proceeds became payable to her

designated beneficiary.  Since Lurline did not designate a beneficiary, Annie (Lurline's only sibling)—*not* Lurline's estate—became the beneficiary of the proceeds under the plan.  Upon Annie's death, Annie's estate received the proceeds since Annie was the beneficiary of Lurline, an entitled beneficiary.  Thus, the proceeds should now pass under state law, presumably pursuant to Annie's will.[4]  Accordingly, since the proceeds never passed to Lurline's estate, Armstrong—in his capacity as the executor of Lurline's estate—could not have disclaimed them.  He had no authority over the proceeds at all.

The Estes defendants dispute this conclusion by pointing to a Second Circuit opinion, *Rolin v. Commissioner of Internal Revenue,* 588 F.2d 368 (2d Cir.1978).  Apparently, the Estes defendants believe that *Rolin* stands for the proposition that an executor can disclaim an interest on behalf of a decedent that the decedent originally possessed but which did not pass to the decedent's estate.  In particular, they rely on the court's statement that "since the principle of retroactive renunciation is that a disclaimer of an interest may be treated as relating back in time, it seems irrelevant to the efficacy of that principle that the interest has expired."  *Id.* at 370.

In *Rolin,* Daniel established a trust which, upon his death,

---

[4]ERISA does not preempt state law governing passage of the proceeds from Annie's estate to the beneficiaries of her will because the plan does not discuss how the proceeds should pass from a beneficiary's estate.  In other words, once the proceeds pass to Annie's estate, the plan ceases to designate a beneficiary;  hence, state law that determines who takes the proceeds under Annie's will does not relate to the plan and is not preempted.

12

would be divided into "Trust A" and "Trust B." His wife, Genevieve, would receive income from the trusts for life. In addition, Genevieve obtained the right to invade the corpus of Trust A during her life as well as general testamentary power of appointment over Trust A's assets. If Genevieve died without having exercised her power of appointment, Trust A would merge into Trust B and the assets would be distributed to the Rolins' issue. Subsequently, Daniel passed away and, four months later, so did Genevieve. Genevieve never received income from either trust and never used her power of appointment. Genevieve's executors then tried to renounce Genevieve's interest in the merged trust. The Service opposed this attempt, arguing that the executors could not disclaim Genevieve's power of appointment because it expired at her death. In deciding the dispute, the court noted that, under New York law, an executor could disclaim a legacy left to a decedent and the disclaimer would relate back to the date of the gift and prevent title from ever divesting. The court then held that, since an executor could disclaim a legacy, there was no reason why he could not also disclaim a power of appointment, even if that power had expired. The court reasoned that a power of appointment was just one right in the bundle of rights constituting a fee simple, and if an executor could disclaim the whole bundle of rights, he could also disclaim one of the rights.

*Rolin* is not really on point here. First, since no ERISA plan was involved in *Rolin,* the court relied heavily on New York wills and trust law for its decision. However, we may not follow state

13

law in this case because such law would "relate" to the plan and thus be preempted (though, of course, we decide that state law governs the passage of the proceeds from Annie's estate). Second, the trust agreement in *Rolin* specifically provided that Genevieve's executors could renounce her interest in the trust should she die before accepting trust benefits. Here, the plan says nothing about a personal representative, executor, or administrator disclaiming on behalf of a decedent. Third, while the power of appointment may have expired at Genevieve's death, at least *some* interest from the trust passed to Genevieve's estate. In other words, some rights from the bundle of rights over the trust that Daniel bequeathed to Genevieve passed to her estate. Given the passage of *some* of the trust rights, the court held that Genevieve's executors could disclaim all of these rights. In our case, though, *none* of the rights Lurline had over the proceeds passed to her estate. They all went to Annie and then Annie's estate. Fourth, even if we were to construe *Rolin* as adopting the general rule that an executor can disclaim an interest on behalf of a decedent that the decedent originally possessed but which did not pass to the decedent's estate (which we do not), it would not matter here. The plan states that plan benefits "but for the disclaimer, [must] otherwise pass to [the entitled Beneficiary] as a result of the death of a Participant...." But if Armstrong had not disclaimed the proceeds, the entitled beneficiary would not have been Lurline or Lurline's

estate but, rather, Annie or Annie's estate.[5] Under the plan, Annie received the proceeds upon Lurline's death (i.e., Annie became the entitled beneficiary) and, after Annie expired, the proceeds passed to Annie's estate.

Therefore, we determine that Armstrong's disclaimer was invalid and that the proceeds must pass according to the plan. This means that Annie received the proceeds upon Lurline's death, and that, after Annie expired, the proceeds passed to Annie's estate. Accordingly, the proceeds must now go to Barbara, the independent executrix of Annie's estate, for distribution under the terms of Annie's will or otherwise.[6]

IV

Lastly, the Layman defendants challenge the district court's order that they pay the plaintiffs $4,461.54 in attorneys' fees and costs. Apparently, the district court awarded this amount to the plaintiffs because they were merely the stakeholders in the litigation and because the Layman defendants were "the unsuccessful defendants in this case." We review an award of attorneys' fees and costs for abuse of discretion. *Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, So. Council of Indus. Workers, Local Union No. 2713,* 103 F.3d 449, 453 (5th Cir.1997).

---

[5]Armstrong executed the disclaimer before Annie expired but did not file it until after her death.

[6]We emphasize that we do not decide in this appeal whether Annie's will is valid or, if it is, how the proceeds should be distributed to the will's beneficiaries. We simply hold that the proceeds passed to Annie's estate under the plan and thus should now be given to Barbara for independent administration.

15

We agree with the district court that the plaintiffs should not bear unnecessary costs and attorneys' fees in this litigation, and that the plaintiffs should be able to recover costs and fees from the unsuccessful defendants in this case. Thus, we will award the plaintiffs $4,461.54 in costs and fees against the Estes defendants.

V

For the foregoing reasons, we REVERSE the judgment of the district court and RENDER judgment in favor of the Layman defendants. Moreover, we ORDER that the plaintiffs recover $4,461.54 in costs and fees against the Estes defendants.

REYNALDO G. GARZA, Circuit Judge, dissenting:

The majority states that the district court erred by conducting a preemption analysis and that the case turns on whether Lurline Estes' executor, Marcus Armstrong, can validly disclaim her right to proceeds from the Phillips Thrift Plan within nine months of Benny's death, as was Lurline's right under the terms of the plan. The majority believes that Armstrong was not a beneficiary under the plan, and therefore, did not have the right to validly disclaim the proceeds from the plan. Accordingly, the majority has voted to reverse the decision of the district court in this matter. While I concur with the first part of this line of reasoning, I disagree with the majority's conclusion that Armstrong does not have the authority to disclaim. I therefore respectfully dissent, for the following reasons.

As the majority points out, the parties agree that the

16

disclaimer satisfied the applicable Code requirements, and if the disclaimer is otherwise valid, Lurline would be deemed to have predeceased Benny Brooks Estes (as did Onis, Benny's father).  If the disclaimer is valid and Lurline is considered to have predeceased Benny, the proceeds from the plan will pass to Benny's children, the Estes defendants.  If the disclaimer is not valid, Benny's cousins, the Layman defendants, get the proceeds.

The majority states that proper interpretation of the "plain language" of the plan can lead us to proper resolution of this dispute, and I agree.  The key issue is whether the reference to "Beneficiary or an entitled Beneficiary," as listed in the plan, includes a personal representative or executor who disclaims on behalf of the beneficiary.  The majority believes that the phrase "Beneficiary or an entitled Beneficiary" should be strictly and literally construed, and therefore, the phrase does not encompass executors or representatives (such as Armstrong in this case).  Under this interpretation, Armstrong's disclaimer is invalid, and the Layman defendants should take the proceeds of the plan rather than the Estes defendants.

I believe the majority's interpretation of the phrase "Beneficiary or an entitled Beneficiary" is overly narrow.  First of all, while it is true that we must look to the plain meaning of the terms within the plan for guidance, the cases cited by the majority state or imply that clarity and a lack of ambiguity are important factors in proper interpretation of the terms in a plan. Specifically, in the cases cited where benefits are denied, the

terms are more sharply restrictive and obvious in their meaning than those in this case. For example, in *Rodrigue v. Western and So. Life Ins. Co.,* this Circuit held that *Rodrigue*'s claim under a state equitable estoppel theory was invalid because he was asking for payment for medical procedures explicitly excluded from the plan. *Rodrigue v. Western and So. Life Ins. Co.,* 948 F.2d 969, 970 (5th Cir.1991) (*Rodrigue* had kidney stones and the plan stated it would not pay for treatment for ailments of the genitourinary system). This case is distinguishable from the instant case because Rodrigue was asking for a treatment explicitly forbidden in the plan, there were no questions of grammar or definition of a particular word involved in *Rodrigue,* and the other cases were similarly specific in what was or wasn't allowed under their plans. *See also Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 57 (4th Cir.1992), *cert. denied* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993); *Lockhart v. United Mine Workers of America 1974 Pension Trust,* 5 F.3d 74, 78 (4th Cir.1993). This specificity is not in place here.

A plain meaning interpretation of "beneficiary" will include agents and representatives of beneficiary, because such interpretation is commonplace in the law. Postmortem disclaimers by executors are quite common and hardly unforeseeable deviations from the terms of the plan (which, as stated, provides for disclaimers for quite some time after the death of the participant or beneficiary). For example, a beneficiary's legal representative can disclaim an interest just as the beneficiary herself can, under

the qualified disclaimer definition as set forth in Section 2518(b) of the Internal Revenue Code of 1986. 26 C.F.R. § 25.2518-2(b)(1)(1996). An interpretation of the Plan which encompasses such disclaimers is not a departure from standard plain language interpretations of contract and labor law, and would not undermine the integrity of the ERISA plan.

Also, the Layman defendants cited no case law for the proposition that a beneficiary's legal representative or executor cannot disclaim an interest in the plan. In fact, there is ample legal support for the contrary. For example, the *Rolin* case cited and distinguished by the majority stands for the proposition that an executor stands in the shoes of a testator beneficiary for the purposes of disclaimer. *Estate of Rolin v. Commissioner of Internal Revenue,* 68 T.C. 919, 1977 WL 3714 (1977), *aff'd* 588 F.2d 368 (2d Cir.1978); *see also Estate of Allen v. Commissioner of Internal Revenue,* 56 T.C.M. (CCH) 1494 (1989). While the majority distinguishes the *Rolin* case from the instant case due to the difference in subject matter, I believe that the relevant point of *Rolin* is the idea that executors have the authority to disclaim property which was to be given to the testator beneficiary, and that the time-period for disclaimers may relate back and act retroactively. I believe that a plain meaning interpretation of beneficiary incorporates the *Rolin* approach with regard to executors. The fact that Texas, as well as many other states, considers executors to have certain powers of disclaimer further bolsters the position that the drafters would assume that

19

beneficiary would encompass executors, in terms of disclaimer and all other powers listed for participants and beneficiaries in the plan, and most specifically, regarding the right to wait up to nine months after the death of Benny to disclaim. TEX. PROB. CODE ANN. § 145, *et seq.* (Vernon 1980 & Supp.1997); TEX. PROB. CODE ANN. § 37A (Vernon 1980 & Supp.1997).

Article XII, Section 4 of the Plan Document incorporates the requirements for disclaimer from the Internal Revenue Code for the purposes of describing the disclaimer requirements for the plan with the following statement.

> In the event that a Beneficiary or an entitled Beneficiary signs and delivers to the committee a written disclaimer of Plan benefits which satisfies the [Internal Revenue] Code's requirements to be tax qualified, and such benefits but for the disclaimer, would otherwise pass to such person as a result of the death of a Participant or entitled Beneficiary, the person executing such disclaimer of benefits shall be deemed to have failed to survive the deceased Participant or entitled Beneficiary from whom he otherwise would have taken.

I believe the majority's concern over the implications of the word "which" in this section of the plan is misplaced and serves to unnecessarily complicate the issue. A plain language reading of this section, consistent with the plain legal usage of the word "beneficiary" leads me to believe that the reference to the Internal Revenue Code is there for the purpose of aiding in the definition of the requirements of an appropriate disclaimer, a definition which (in both plain usage and the Tax Code) includes executors. The "which" is there to modify the previous phrase, and serves to point toward proper definition of what beneficiary will encompass. It does not create and "either/or" situation or an

20

excessively limiting construction of the phrase.  This term is therefore far from fatal to the Estes defendants.

Moreover, the plan does not use the phrase "Beneficiary or an entitled Beneficiary" exclusively in describing who can execute disclaimer.  The plan refers to "person executing such disclaimer." I believe this further undermines the contention that the drafters intended a very strict and literal definition of beneficiary, one which would not encompass other persons such as executors or representatives.  If that were the intent of the drafters, they would presumably would have consistently used the allegedly limiting phrases throughout this section of the plan.

In addition, I believe that the Estes defendants are the appropriate recipients of the proceeds from the Plan for the simple reason that I find it difficult to believe that Benny Brooks Estes would want his hard-earned money to go to someone other than his immediate family.  I suspect that Benny would turn over in his grave at the thought of such a distribution.  Also, it has been stated that one of the primary goals of ERISA is to provide support for an employee and his family. *Cartledge v. Miller,* 457 F.Supp. 1146, 1156 (S.D.N.Y.1978);  *In re Masters,* 73 B.R. 796, 799 (Bankr.D.Or.1987).  A distribution of plan proceeds which favors the cousins of Benny Brooks Estes over his own children is not only likely to be exactly the opposite of what Benny would have wanted, but is also not in keeping with the goals of ERISA.

Further, the majority's belief that the Layman defendants should receive the proceeds from the plan because that would be the

presumed intent of the drafters of the plan rings hollow, given that Phillips was the party that filed an interpleader action to clarify who rightfully should receive the proceeds. I find it unlikely that Phillips would have filed this action and hold up distribution of the proceeds if it was so obvious that the proper distribution under the plan would be to the Layman defendants. Last, the majority's assertion that a distribution to the Estes defendants is a strained construction of the plan seems a bit odd given that it is the majority which seems to be straining to find a way to take the proceeds away from the parties that Benny would most likely want to have provided for. A decision in favor of the Estes defendants, aside from being the more just result, makes more sense given the terms of the plan and the actions of Phillips.

For the foregoing reasons, I respectfully dissent, and accordingly would affirm the decision of the district court.

22