Clarence E. LOCKHART,
Plaintiff–Appellee,

v.

UNITED MINE WORKERS OF AMERICA 1974 PENSION TRUST; Paul R. Dean; Michael H. Holland; Marty D. Hudson; Elliott A. Segal, Trustees, Defendants–Appellants.

No. 93–1276.

United States Court of Appeals,
Fourth Circuit.

Argued July 15, 1993.

Decided Sept. 17, 1993.

H. John Taylor, Rand, WV, argued, for plaintiff-appellee.

Before WILKINSON, LUTTIG, and WILLIAMS, Circuit Judges.

## OPINION

WILLIAMS, Circuit Judge:

Clarence Lockhart applied to the United Mine Workers of America 1974 Pension Trust for a disability pension, claiming that he was totally disabled "as a result of a mine accident." UMWA 1974 Pension Plan, Art. II.C. (J.A. at 244.) .The Trustees of the 1974 Pension Trust denied his application, and Lockhart sought relief in district court under § 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) (1988). Both parties moved for summary judgment. The district court concluded that the Trustees' denial of a disability pension was arbitrary and capricious, and therefore granted Lockhart's motion for summary judgment and ordered the Trustees to award Lockhart a disability pension. We reverse and remand for the entry of an order granting summary judgment to the Trustees.

### I.

Lockhart was employed by Amherst Industries, Inc., as a shake-out operator at a coal tipple in Huntington, West Virginia. Lockhart and his co-workers regularly parked on a vacant lot located across several railroad tracks from the Amherst facilities.[1] The employees could not reach the tipple from the lot without crossing at least two sets of railroad tracks.

On January 17, 1976, several railroad cars blocked Lockhart's path to work. As Lockhart climbed between two cars, the cars moved, causing Lockhart to lose his balance and fall underneath the railroad cars. The moving cars severed both of his legs.[2]

Glenda Sullivan Finch, Associate Gen. Counsel, UMWA Health & Retirement Funds, Washington, DC, argued Robert D. Valer, Asst. Gen. Counsel, UMWA Health & Retirement Funds (on the brief), for defendants-appellants.

---

1. The parties dispute whether the vacant lot constituted a de facto employee parking lot. Lockhart presented evidence that Amherst essentially forced its employees to park in the vacant lot, whereas the Trustees presented evidence that on-site parking was available to Amherst employees.

This factual dispute is not material to our disposition.

2. C & O Railroad Company owned the vacant lot, the railroad cars, and the property on which Lockhart was injured.

Lockhart applied for and received Social Security Disability benefits with an onset date of January 17, 1976. The benefits were terminated nine months later when Lockhart returned to his job at Amherst. Lockhart continued his employment at the tipple until February 28, 1989, when the tipple permanently ceased operations. Lockhart's Social Security benefits were then reinstated.

On November 16, 1989, Lockhart applied for a disability pension from the Trust, contending that he became "totally disabled as a result of a mine accident" within the meaning of Article II.C of the UMWA 1974 Pension Plan.[3] (J.A. at 244.) The Director of the UMWA Health and Retirement Funds Field Service Office denied Lockhart's application on the ground that Lockhart had failed to establish that he was involved in a "mine accident." (J.A. at 1.) Lockhart appealed to the Trustees for a review of his disability determination. In a written "Decision on Review," the Trustees concluded that Lockhart was not entitled to a disability pension under the terms of the 1974 Pension Trust because Lockhart's "injury occurred en route to work and was not a direct result of his performance of classified work for a signatory employer," (J.A. at 188), and therefore did not occur "as a result of a mine accident."

Lockhart subsequently commenced this action in district court against the Trust and the Trustees, alleging that he met the necessary eligibility requirements for a disability pension and that the Trustees arbitrarily, capriciously, and unreasonably denied his application for such a pension. Shortly thereafter, the parties filed an agreed motion to

remand the case to the Trustees for reconsideration in light of any new evidence which Lockhart could produce. On March 13, 1992, Lockhart submitted a sworn statement detailing the facts regarding his 1976 accident. The Trustees again upheld their denial of Lockhart's application for disability benefits on the ground that Lockhart's statement provided no new material evidence.

After the Trustees' decision, both parties moved for summary judgment. The district court concluded that the Trustees' decision not to grant benefits to Lockhart was arbitrary and capricious and granted summary judgment for Lockhart. In reaching this conclusion, the district court focused on the similarities between the circumstances which surrounded Lockhart's injury and the circumstances which led the Trustees to grant a disability pension to another mine worker, Donald Harless. An internal Pension Funds document described the decision to grant disability benefits to Harless as follows:

In 1981 the Funds granted a disability retirement pension to Donald Harless ("Harless"), a miner who was injured when he fell on ice while walking across the parking lot to the lamphouse after changing into his work clothes in the company bathhouse. Harless' employer did not use a time clock. The Funds relied heavily on DB–6(78) and on workman's compensation law in its decision. The Funds felt Harless satisfied the criteria set forth in DB–6(78) in that he was preparing for the start of his work day.

(J.A. at 208.)[4] The district court concluded that Lockhart's case and Harless's case were

---

3. The Plan provides: "A Participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ..., be eligible for a pension while so disabled." (J.A. at 244.)

4. This description comes from correspondence from the Pension Fund Associate General Counsel and Senior Associate Counsel to the Senior Manager for Eligibility Quality Control. The correspondence related to the application for disability pension benefits of Dwayne C. Thomas. The document analyzed whether, in the opinion of counsel, Thomas was "disabled as a result of a mine accident." (J.A. at 205.) Thomas had finished his shift, showered, clocked out, and was

walking to the employee parking lot when he slipped on ice and injured his back. Counsel for the Trust concluded that Thomas had not been injured "as a result of a mine accident," specifically distinguishing Harless's case on the ground that "Harless' injury occurred within the course of employment" because "Harless had changed in the bathhouse and was walking to the lamphouse" and because "Harless' employer did not use a time clock." (J.A. at 208.)

Thomas sued the Trustees in the Western District of Pennsylvania, where the court determined that the Trustees had arbitrarily and capriciously denied him benefits. *See Moats v. United Mine Workers Health & Retirement Funds*, 981 F.2d 685, 687 (3d Cir.1992) (discussing *Thomas v. United Mine Workers 1974 Benefit Plan*

"directly comparable" and "not distinguishable." (J.A. at 287.) The court reasoned that "[b]oth miners were 'within the course of [their] employment' because they were 'preparing for the start of [their] work day,'" and also mentioned the fact that neither employer used a time clock. (J.A. at 288.) Having found that Harless and Lockhart were similarly situated, the district court concluded that it was arbitrary and capricious to grant benefits to one mine worker and deny them to the other, and consequently granted summary judgment for Lockhart.

## II.

We review the district court's grant of summary judgment *de novo*. *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874 (4th Cir.1992). However, under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), our power to review a decision of the trustees of an employee benefits plan to deny benefits is significantly more limited. *Firestone* held that if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *id.* at 115, 109 S.Ct. at 956–57, courts should review a denial of benefits only for abuse of discretion, *see id.* at 111, 109 S.Ct. at 954. We have previously determined that the abuse of discretion standard applies to review of the Trustees' decisions under the UMWA 1974 Pension Plan. In *Boyd v. Trustees of the United Mine Workers Health and Retirement Funds*, 873 F.2d 57, 59 (4th Cir.1989), we stated:

There is no question that the Trustees of the UMW Pension Plan here have discretionary authority, since they have the power of "full and final determination as to all issues concerning eligibility for benefits" and "are authorized to promulgate rules and regulations to implement this Plan...." Pension Plan, Art. VIII.A, B(1). Therefore, we must review the Trustees' decision denying [the employee] disability pension benefits for abuse of discretion.

(Ellipses in original.)[5] In determining whether the trustees of an employee benefits plan abused their discretion in denying benefits,

[w]e must give due consideration, for example, to whether the administrators' interpretation is consistent with the goals of the plan; whether it might render some language in the plan meaningless or internally inconsistent; whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; whether the provisions at issue have been applied consistently; and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan.

The dispositive principle remains, however, that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own.

& *Trust*, No. 8902371, 1990 WL 471855 (W.D.Pa. Oct. 31, 1990)). The Third Circuit affirmed the district court without opinion. *Thomas v. United Mine Workers 1974 Benefit Plan & Trust*, 935 F.2d 1282 (3d Cir.1991). However, the Third Circuit has since repudiated *Thomas* and indicated that *Thomas* has "no precedential significance." *Moats*, 981 F.2d at 690.

5. Although *Firestone* appears to have explicitly adopted the abuse of discretion standard, 489 U.S. at 115, 109 S.Ct. at 957 (quoting abuse of discretion standard from *Restatement (Second) of Trusts* § 187, Comment d (1959)), to replace the then-prevailing arbitrary and capricious standard, *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989) ("[a]s we read [*Firestone*], the Supreme Court has mandated the total abandonment of the 'arbitrary and capricious' formulation"), other courts have continued to apply the

arbitrary and capricious standard, *see, e.g., Arfsten v. Frontier Airlines, Inc. Retirement Plan for Pilots*, 967 F.2d 438, 440 (10th Cir.1992). We have previously recognized that "[i]t is unclear whether the 'abuse of discretion' standard adopted in [*Firestone*] is synonymous with the 'arbitrary and capricious' standard previously used by the Fourth Circuit and most other courts." *Richards v. United Mine Workers Health & Retirement Fund*, 895 F.2d 133, 135 (4th Cir. 1990); *see also District 17, District 29, Local Union 7113 v. Allied Corp.*, 765 F.2d 412, 416–17 (4th Cir.) (en banc) (applying pre-*Firestone* arbitrary and capricious standard of review), *cert. denied*, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). Because our disposition would be the same under either standard, we need not resolve the differences, if any, between the two standards.

*De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1188 (4th Cir.1989) (internal citations and quotation marks omitted); *see also Crosby v. Crosby,* 986 F.2d 79, 83 (4th Cir.1993) (prime consideration is reasonableness of trustees' decision); *Finley v. Special Agents Mut. Benefits Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir.1992) (following *De Nobel*).

Lockhart's challenge to the Trustees' denial of benefits focuses principally on the fourth *De Nobel* factor, the consistency with which the Trustees have interpreted governing plan provisions. But as *De Nobel* explains, the Trustees must consider other factors as well, such as the language of the plan and any rules or regulations promulgated thereunder. We turn now to consider those factors.

### III.

■ The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself. *See Callahan v. Rouge Steel Co.,* 941 F.2d 456, 460 (6th Cir.1991) (most important factor in considering whether denial of benefits was arbitrary and capricious is the language of the plan); *see also* 29 U.S.C.A. § 1104(a)(1)(D) (West 1985 & Supp.1993) (trustees must discharge duties in accordance with documents and instruments governing the plan); 29 U.S.C. § 1102(a)(1), (b)(4) (1988) (benefit plans must be in writing and must specify the basis on which payments are to be made from the plan). If the denial of benefits is " 'contrary to the clear language of the [p]lan,' " *De Nobel,* 885 F.2d at 1188 (quoting *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 316 (5th Cir.1982)), the decision will constitute an abuse of discretion. *See Davis v. Burlington Indus., Inc.,* 966 F.2d 890, 895 (4th Cir.1992) ("If the plan language is unambiguous, however, we would not defer to a contrary interpretation by the" trustees.); *cf. Dennard,* 681 F.2d at 314 ("When the trustee's interpretation of a plan is in direct con-

flict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior."). Here, the Plan provides no more than that a qualified employee is entitled to a disability pension if he becomes totally disabled "as a result of a mine accident." (J.A. at 244.) The Plan does not, however, define the term "mine accident." Giving the words their ordinary meaning, we find it impossible to say that, based on the language of the plan alone, Lockhart was entitled to a disability pension. Lockhart was "not injured in a mine or while working in a mine facility," *Moats v. United Mine Workers Health & Retirement Funds,* 981 F.2d 685, 688 (3d Cir.1992) (interpreting the term "mine accident"), but instead was run over by a railroad car on his way to work. Consequently, the Trustees "did not violate the plain meaning of the Plan's language," *id.,* when they determined that Lockhart was not injured in a mine accident.

■ We next look to the rules and regulations issued by the Trustees to implement the Plan.[6] The Trustees chose to fashion the Plan's rules and regulations in the form of questions and answers ("Q & As"). Lockhart argues that "the Defendant UMWA 1974 Pension Trust and its Trustees ... did not follow its own established guidelines and rules for determining eligibility for disabled miner's pensions." (Br. of Appellee at 2.) We disagree.

In the Q & As, the Trustees adopted a generous definition of "mine accident." Q & A 252 asks, "what test must be met for a finding that a miner was 'disabled as a result of a mine accident,' " and provides this answer:

The following characteristics must be present: (1) Unexpectedness: The disability must have been unlooked for and unforeseen; (2) Definiteness: The disability must be *traceable to a definite time, place and occasion which occurred within the course*

---

6. Given that the Trustees have the authority to formulate the rules and regulations that implement the Plan, *see* 1974 Pension Plan Article VIII.B(1), it is not subject to question that the Trustees have the same discretion to interpret these rules and regulations as they have to interpret the Plan itself. *See, e.g., Gordon v. ILWU-*

*PMA Benefit Funds,* 616 F.2d 433, 439 (9th Cir. 1980) (applying arbitrary and capricious standard of review to trustees' interpretation of rules adopted by trustees under plan); *Miniard v. Lewis,* 387 F.2d 864, 865 (D.C.Cir.1967) (per curiam) (same), *cert. denied,* 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed.2d 144 (1968).

*of the mine worker's employment.* A progressive disease does not meet this test and therefore cannot be a disability that resulted from a mine accident; (3) Force or impact: The disability must have been caused by the exertion or impact of some external physical force or object against the body or by the exertion or impact of the body against some external physical object; i.e., not simply as a result of the mine worker's own physical condition. Q & A 252.[7] (J.A. at 203 (emphasis added).) Two other Q & As are relevant to this appeal. Q & A 288 provides:

> Q. A miner, either going to work or returning from work at the mine, is killed in an automobile accident on coal company property. Can this be considered as a mine accident death ...?

> A. No, the accident resulting in the miner's death must have occurred *as a direct result of his performance of classified work* for a signatory Employer.

(J.A. at 190 (emphasis added).) Finally, Q & A DB–6 provides that the term "mine accident" includes the situation where an employee, after having reported for work, is "killed in an accident at the garage while he was cleaning his truck bed in preparation for his day's work." (J.A. at 191.) The Q & A explains that under these circumstances, the employee's death resulted from a mine accident because the "accident occurred in the ordinary course of the participant's classified employment." (*Id.*)

Under these regulations, the Trustees acted entirely within their discretion in concluding that Lockhart was not totally disabled "as a result of a mine accident."[8] The Trustees concluded that Lockhart was "en route to work" at the time of his injury. (J.A. at 188.) The district court apparently agreed with this determination, for it stated that Lockhart was injured "while en route to work just a few yards away from his ultimate destination." (J.A. at 287.) Under Q & As

288 and DB–6, because Lockhart was injured while "going to work" instead of "preparing for his day's work," his accident did not occur "as a direct result of his performance of classified work" and thus does not qualify as a "mine accident." Lockhart's own evidence supports the Trustees' finding. Lockhart stated that he "had stepped up on a 'coupling head' between two railroad cars to cross the tracks and *get to work*" when the railroad cars moved. (J.A. at 232 (emphasis added).) Lockhart also admitted that he was not "working" at his employer's facility at the time of the accident, (J.A. at 63), and that the accident happened while he was "going to work," (J.A. at 65).

The district court, it seems, relied to a certain extent on Lockhart's *location* at the time of the accident in determining whether he was entitled to disability benefits: the district court's statement that Lockhart's accident took place "just a few yards away from his ultimate destination," (J.A. at 287), implies that the district court believed that, had Lockhart reached his ultimate destination, he would have been entitled to a disability pension. Yet this conclusion does not follow from a fair reading of the Trustees' Q & As. The Trustees' regulations make clear that the location of the accident—either on or off company property—is not dispositive. Q & A 288 states that a mine worker who is injured *on* company property while en route to or from work is not necessarily entitled to a disability pension unless the injury is the "direct result of his performance of classified work." *See Moats,* 981 F.2d at 686 (upholding UMWA Trustees' denial of benefits even though employee injured on premises of employer).

Based on our review of the plan language, rules, and regulations, we conclude that the Trustees' decision to deny Lockhart a disability pension was based on a reasonable interpretation of the plan documents. *See id.* at 688 (Q & As supported trustees' decision).

---

**7.** Q & A 252 also details several circumstances in which a miner will be considered to have been disabled as a result of a mine accident, including circumstances where "a miner strikes himself with his own tool," where "a miner slips and falls," where "a miner inhales a poisonous gas,"

and even where "a miner bumps his head on a solid object." (J.A. at 203.)

**8.** In reaching its decision, the Trustees specifically relied on the principles set forth in Q & As 252 and 288. (J.A. at 187.)

## IV.

■ Despite the fact that the Trustees' decision was entirely consistent with both the language of the plan and the rules and regulations promulgated thereunder, Lockhart nonetheless insists that the Trustees' decision was an abuse of discretion because the Trustees failed to apply their regulations consistently. Lockhart maintains that the facts of his case are indistinguishable from the facts of Donald Harless's case and that the Trustees abused their discretion by denying him a disability pension after having granted one to Harless. As noted above, the district court agreed with Lockhart and ordered the Trustees to grant him disability benefits. We reach a result different from the district court because we conclude that the Trustees acted within their discretion in determining that the Harless case was factually distinguishable from Lockhart's case.

Harless's accident occurred while he was "walking across the parking lot to the lamphouse after changing into his work clothes in the company bathhouse." (J.A. at 208.) The Trustees concluded that this activity "satisfied the criteria set forth in DB–6(78) in that he was preparing for the start of his work day." (J.A. at 208.) The district court concluded that Harless's case "is not distinguishable from Lockhart falling underneath the [railroad cars] while en route to work just a few yards away from his ultimate destination," (J.A. at 287), because both Harless and Lockhart were "'preparing for the start of [their] work day,'" (J.A. at 288).[9]

The Trustees agree that Harless was preparing for the start of his work day, but contend that the same is not true of Lockhart. They argue that "Harless was disabled in a 'mine accident' because he was already at work performing a task required by his employer in preparation for start of his work day." (Br. of Appellants at 16.) Harless was engaged in an activity—retrieving his lamp from the lamphouse—that the Trustees considered preparation for the work day, and the Trustees reasonably concluded that Har-

less's case fell within the meaning of DB–6 and granted him a disability pension. *See Moats,* 981 F.2d at 689 (accepting the Trustees' interpretation of the Harless case). Lockhart, on the other hand, was not performing any task that the Trustees could reasonably consider preparation for the work day. Lockhart did not identify any activity he undertook in preparation for his work; consequently, the Trustees were justified in concluding that Lockhart's injury was not a "direct result of his performance of classified work" within the meaning of Q & A 288. Because the Trustees' interpretation of the Harless case was rational, their "interpretation must be allowed to control." *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 601 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983)); *see also Jung v. FMC Corp.,* 755 F.2d 708, 712 (9th Cir.1985). Therefore, the Trustees' decision to deny Lockhart a disability pension did not constitute an abuse of discretion.

## V.

In conclusion, the Trustees' decision to deny Lockhart disability benefits under the 1974 Pension Plan comports with the language of the Plan, the rules and regulations of the Plan, and the Trustees' prior decisions under the Plan. The Trustees did not abuse their discretion, and summary judgment for Lockhart was improper. Accordingly, we reverse the judgment of the district court and remand for the entry of an order granting summary judgment to the Trustees.

**REVERSED AND REMANDED.**

---

9. The district court also identified as a similarity between the two cases the fact that neither individual's employer used a time clock. All this demonstrates is that the Trustees could not use either employee's "clocking in" as evidence that he was at work, but instead had to rely on other evidence to decide whether he was "preparing for the start of the work day."