**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHELBIA DUNBAR,
Plaintiff-Appellee,

v.

CONSOLIDATION COAL COMPANY,
Defendant-Appellant,                                        No. 96-2417

and

TRUSTEES OF THE UNITED MINE
WORKERS OF AMERICA PENSION FUND,
Defendant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, Senior District Judge.
(CA-94-839-5)

Submitted: April 30, 1998

Decided: June 29, 1998

Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

L. Anthony George, JACKSON & KELLY, Denver, Colorado, for
Appellant. Jacqueline Ann Hallinan, Mary McQuain, CALWELL &
MCCORMICK, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jerry Dunbar, a coal miner and member of the United Mine Workers of America (UMWA) died on April 18, 1992. His widow, Shelbia, claimed that she was entitled under her husband's group life insurance policy to $35,000 in death benefits. The Trustees of the UMWA Health and Retirement Funds (Trustees) denied Mrs. Dunbar's claim. She then brought this action against her husband's former employer, Consolidation Coal Company (Consolidation), pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B) (1994). The district court found that the Trustees had abused their discretion in denying benefits and entered summary judgment for Mrs. Dunbar. Consolidation now appeals. We vacate and remand for entry of judgment for Consolidation.

I

Jerry Dunbar worked as a coal miner for Consolidation for more than twenty years. He stopped working on February 13, 1991, when he became disabled due to chronic illness. The UMWA and Consolidation were signatories to the National Bituminous Coal Wage Agreement of 1988 (Wage Agreement). Pursuant to the Wage Agreement, Dunbar received sickness and accident benefits for the period from February 21, 1991, to March 9, 1992. Dunbar was hospitalized on March 28, 1992, following an automobile accident. He died on April 18, 1992.

Article XX, § (c)(3)(i) of the Wage Agreement requires signatory employers to maintain employee benefit plans to provide health and other non-pension benefits to their employees. In accordance with this mandate, Consolidation issued its "Benefit Plan for UMWA Represented Employees of Consolidation Coal Company" (Plan).

2

The Plan provides for life and accidental death benefits. (Plan, Art. III(B)(1)(a)). An employee who ceases work because of disability is eligible to continue life insurance coverage for the greater of: (1) the period for which he is eligible under the Wage Agreement for sickness and accident benefits; or (2) a period dependent upon the number of hours the employee worked during the twenty-four consecutive calendar months preceding the date the employee last worked. (Plan, Art. III(D)(1)(b)). However, the Plan specifies that "[i]n no event shall any combination of the provisions of (a), (b), (c), (e) or (g) above result in continuation of coverage beyond the balance of the month plus 12 months from the date last worked." (Plan, Art. III(D)(1)(d)). An employee may apply to the insurance carrier within thirty-one days of termination of his group policy for conversion of the policy into an individual, $35,000 policy. (Plan, Art. III(D)(3)(a)). Section One of the Summary Plan Description[1] states that "[w]hen and how benefits terminate under the [P]lan are fully described" therein.

The Plan states that the Plan Administrator shall notify each employee of the termination of extended coverage under the Plan and explain both the conversion privileges and pertinent enrollment procedures. However, "[f]ailure to provide such notice shall not extend coverage beyond the period otherwise provided in the Benefit Plan." (Plan, Art. III(A)(10)(b)).

II

In July 1992, Dunbar's widow, Shelbia, applied for $35,000 in death benefits under the Plan. A human resource officer at Consolidation denied her claim, and Consolidation's Plan Administrator affirmed the denial of benefits. Mrs. Dunbar then appealed to the Trustees. The Trustees found, among other things, that Jerry Dunbar was eligible for the continuation of life insurance coverage for the balance of the month last worked (February 1991) through Febru-

_____

[1] The Summary Plan Description (SPD) is a document provided to employees who are covered by the Plan. The SPD is subdivided into four sections. Section One provides general information about the Plan, Section Two summarizes the Plan, Section Three is the complete text of the Plan, and Section Four describes the Plan's claim procedures.

3

ary 28, 1992,**2** and that he was ineligible for life insurance when he died. Further, the Trustees found that there was no obligation to notify Dunbar that his coverage had terminated. Therefore, the Trustees denied the request for death benefits.

Mrs. Dunbar filed a motion for reconsideration, claiming that Consolidation had both breached its fiduciary duty to notify her husband of the termination of his insurance and improperly calculated the amount of time he was eligible to receive sickness and accident benefits. Her position was that her husband had life insurance coverage as long as he was eligible for sickness and accident benefits. She maintained that he was eligible for sickness and accident benefits, and therefore for life insurance, until March 20, 1992. Because her husband died within the thirty-one-day period following March 20, she was entitled to death benefits by the terms of the Plan.**3** The Trustees rejected her argument and denied the motion for reconsideration.

Mrs. Dunbar then filed this action in the district court pursuant to 29 U.S.C. § 1132(a)(1). The court granted summary judgment in favor of Mrs. Dunbar, finding that her husband was eligible for sickness and accident benefits through March 20, 1992. He therefore had until April 20, 1992, to convert his group life insurance policy to an individual policy. Because he died on April 18, 1992, or within the thirty-one-day conversion period, he was deemed covered by life insurance at the time of his death, even though he had not applied for an individual policy. Consolidation timely appealed.

III

We review orders granting summary judgment de novo. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1226 (4th Cir. 1998). However, Firestone Tire & Rubber Co. v. Bruch , 489 U.S. 101 (1989), significantly limited our power to review a decision of the

_____

**2** The date should have been February 29, 1992.
**3** The Supplemental Insurance Plan provides that "[i]f your spouse should die during the thirty-one day conversion period, the amount of life insurance which your spouse was eligible to convert to an individual policy will be paid to you even if application for the individual policy has not been made."

4

trustees of an employee benefit plan to deny benefits. See Lockhart v. UMWA 1974 Pension Trust, 5 F.3d 74, 77 (4th Cir. 1993). Bruch held that review of plan trustees' decisions is de novo unless the plan administrators or fiduciaries have discretion to determine eligibility for benefits. In that case, the abuse of discretion standard applies to review of the benefits eligibility determination. See Bruch, 489 U.S. at 115. We review benefits decisions under the UMWA 1974 Pension Plan for abuse of discretion. See Boyd v. Trustees of United Mine Workers Health and Retirement Funds, 873 F.2d 57, 59 (4th Cir. 1989).

In exercising their discretion, the Trustees are obligated to pay legitimate claims and to guard trust assets against improper ones. See Sargent v. Holland, 114 F.3d 33, 35 (4th Cir. 1997). There is no abuse of discretion if the Trustees' decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997) (internal quotations omitted). In determining whether the Trustees abused their discretion:

> "[W]e must give due consideration, for example [1] to whether administrators' interpretation is consistent with the goals of the plan; [2] whether it might render some language in the plan meaningless or internally inconsistent;[3] whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; [4] whether the provisions at issue have been applied consistently; [5] and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan."

Id. at 161 (quoting de Nobel v. Vitro Corp., 885 F.2d 1180, 1188 (4th Cir. 1989)).

IV

"The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." Lockhart v. UMWA 1974 Pension Trust, 5 F.3d at 78. Here, the Plan plainly states that "[i]n no event shall any combination of the provisions of (a), (b), (c), (e) or (g) above result in continuation of coverage beyond the balance

5

of the month plus 12 months from the date last worked." (Plan, Art. III(D)(1)(d)).**4** Although the Plan Administrator is to notify the employee of both the termination of benefits and the conversion privilege under the Plan, the Plan also clearly states that "[f]ailure to provide such notice shall not extend coverage beyond the period otherwise provided in the Benefit Plan." (Plan, Art. III(A)(10)(b)).

We conclude that the Trustees did not abuse their discretion in finding that Mrs. Dunbar was not entitled to proceeds of her husband's policy because that policy had plainly lapsed under the Plan. Jerry Dunbar was eligible for life insurance benefits from the end of the month in which he last worked (or February 28, 1991) and for twelve months thereafter (or until February 29, 1992). He failed to exercise his conversion option during the ensuing thirty-one-day period. And the Trustees were not obligated to inform him of the termination of his benefits or of the conversion privilege. Therefore, the Trustees complied with the clear meaning of the Plan when they denied Mrs. Dunbar's request for the proceeds of her husband's life insurance policy. See Lockhart v. UMWA 1974 Pension Trust, 5 F.3d at 78.

V

We accordingly vacate the judgment of the district court and remand for entry of judgment in favor of Consolidation. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

VACATED AND REMANDED

_____

**4** Mrs. Dunbar asserts that the twelve-month cap applies only to an insured who is claiming life insurance coverage under two or more paragraphs of Art. III(D)(1). Thus, she contends that someone who claims coverage because of both layoff and disability would be eligible for only twelve months of continued coverage. Someone--like Dunbar--who stopped working only because of disability would not be subject to the twelve-month limitation. We find that the Trustees' reasoning in construing the cap to apply to employees who cease work for one or more reasons was "the result of a deliberate, principled reasoning process" and "is supported by substantial evidence." Brogan v. Holland, 105 F.3d at 161.

6