**Arnold VANCE, Plaintiff,**

v.

**Michael HOLLAND, et al., Defendants.**

**No. CIV. A. 97–0269–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Oct. 5, 1998.

Lewey Keith Lee, Paul L. Phipps, Wise, VA, for Plaintiff.

Charlie R. Jessee, Abingdon, Jerry Mims, Washington, DC, for Defendants.

## OPINION

JONES, District Judge.

The question in this case is whether a coal miner who suffered a back injury that did not involve force or impact to the body was properly held by the mine workers pension plan not to be qualified for a disability pension. Finding that substantial evidence supported the decision to deny pension benefits, I hold that the plan's decision was not an abuse of discretion and grant the defendants' motion for summary judgment.

### I. Background.

On June 18, 1996, the plaintiff, Arnold Vance, applied for a disability pension from the United Mine Workers of America ("UMWA") 1974 Pension Trust ("Pension Trust"). Citing an incident while working for Island Creek Coal Company ("Island Creek"), a signatory employer, Vance claimed that a back injury he sustained on March 2, 1994, rendered him totally disabled. By letter dated September 20, 1996, Vance was informed that his application had been denied because he had failed to establish that his disability was a qualifying mine accident.

Vance appealed this initial determination, and, following a March 26, 1997, hearing, the Pension Trust affirmed the denial of benefits on August 13, 1997. The same grounds were given in its final decision, namely, that a "mining accident," as it is defined in the Pension Trust's rules and regulations, had not been established.

Having exhausted all administrative proceedings, the plaintiff brings this action against the trustees of the Pension Trust ("Trustees") pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1132(a)(1)(B) (West Supp.1998). This court has jurisdiction to review the Trustees' decision pursuant to 29 U.S.C.A. § 1132(e).

Vance filed his complaint on October 29, 1997, and therein alleges that the Trustees acted in an "arbitrary and capricious manner." (Pl.'s Compl. at 2.) Vance requests relief in the form of disability pension benefits, including back pension benefits, and attorneys' fees as allowed under 29 U.S.C.A. § 1132(g)(1). Following service of process, the Trustees filed their answer on March 3, 1998, and therein state that the denial of Vance's disability pension "is supported by substantial evidence, is not arbitrary and capricious nor an abuse of discretion, and is in accordance with the law." (Def.'s Answer at 2.)

Both parties now move for summary judgment. The issues in this action have been briefed and orally argued and are now ripe for decision.

### II. Facts.

Arnold Vance, a resident of Paynesville, West Virginia, worked for Island Creek as a coal miner from August 1969 to July 1994. Vance's former employer, Island Creek, is a signatory to the Pension Trust, which is "one

of several separate employee benefit trusts, collectively referred to as the UMWA Health and Retirement Funds." (Def.'s Mem. at 2.)

The eligibility requirements for pension benefits from the Pension Trust are contained in the UMWA 1974 Pension Plan ("Pension Plan"). (*See* Def.'s Mem. at Ex. B.) Article II.C. of the Pension Plan provides that a participant with at least ten years of signatory service is eligible for pension benefits if total disability is caused by a mine accident and the participant is subsequently determined to be eligible for social security disability insurance ("SSDI") benefits. The term "mine accident" is not defined in the Pension Plan itself. The rules and regulations adopted by the Trustees pursuant to their discretionary authority under Article VIII.B.(1) of the Pension Plan, however, specify in question and answer format that a disabling mine accident requires (1) "unexpectedness," (2) "definiteness," and (3) "force or impact." (Def.'s Mem., Q & A 252, at Ex. C.) As for the third component, "[t]he disability must have been caused by the exertion or impact of some external physical force or object against the body or by the exertion or impact of the body against some external physical object; i.e., not simply as a result of the mine worker's own physical condition." (Def.'s Mem., Q & A 252, at Ex. C.)

On March 2, 1994, Vance was working in his capacity for Island Creek on-site as an electrician. During a mandatory fire drill at approximately 1:50 a.m., Vance attempted to pass through a metal stopping door, approximately thirty-four inches by thirty-four inches in size with the bottom of the door starting about sixteen inches above the mine floor. As he stooped to go through the door, Vance, a taller man at six feet, two inches in height, had to get into a crouched position in order to pass through the door, while wearing a self-rescuer, hat, light, and mining belt. He was able to get one foot through the opening before feeling extreme pain in his back. Unable to finish rising up out of the door space, Vance fell to his knees and was transported to the outside of the mine with assistance.

An initial injury report was filed at Island Creek on March 2, 1994, and Vance was seen at the Buchanan General Hospital Emergency Department that morning, where he reported the incident already described and had X rays taken of his back. Vance was examined by a number of physicians in the subsequent months for lower back pain and related physical and mental trauma, but at no time was an injury caused by an external, physical force or impact described or diagnosed.

On June 3, 1994, Vance received a workers' compensation award dating back to March 10, 1994. On April 18, 1996, Vance received a fully favorable decision awarding him SSDI benefits dating back to March 2, 1994, the date of the incident, as a result of his physical and mental condition.

### III. Standard of Review.

It is well-established that the abuse of discretion standard under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), applies to federal review of the Trustees' decisions under the UMWA pension plans. *See Hale v. Trustees of United Mine Workers Health and Retirement Funds*, 23 F.3d 899, 901 (4th Cir.1994); *Lockhart v. UMWA 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir.1993); *Richards v. United Mine Workers Health & Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1990); *Boyd v. Trustees of United Mine Workers Health & Retirement Funds*, 873 F.2d 57, 59 (4th Cir.1989). *Firestone* held that this court's ability to review a decision of the administrators of an employee benefits plan is curtailed where, "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. 948. It is undisputed that such discretionary authority exists under the UMWA 1974 Pension Plan. The courts have read the provisions of Article VIII.A. and B.(1) of the Pension Plan to confer the requisite discretionary authority. *See Lockhart*, 5 F.3d at 77 (citing *Boyd*, 873 F.2d at 59). Those provisions state that the Trustees "shall have full and final determination as to all issues concerning eligibility for benefits" and authorize the Trustees "to promulgate rules and regulations to implement this Plan." (Def.'s Mem., Pension Plan, at Ex. B, p. 32.) Because the Trustees of the Pension Plan exercise such discretion, "their 'deci-

sions are reviewed for abuse of discretion and will not be disturbed if they are reasonable.'" *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997) (quoting *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 787 (4th Cir. 1995)).[1]

Under the abuse of discretion standard, the Trustees have not violated the standard if their decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein,* 70 F.3d at 788 (internal quotations omitted). The Fourth Circuit in *Lockhart* discussed a number of potential criteria for determining whether the trustees of an employee benefits plan abused their discretion in denying benefits, as follows:

> [W]hether the administrators' interpretation is consistent with the goals of the plan; whether it might render some language in the plan meaningless or internally inconsistent; whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; whether the provisions at issue have been applied consistently; and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan.

5 F.3d at 77–78 (quoting *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1188 (4th Cir.1989) (internal citations and quotation marks omitted)). The dispositive principle remains, however, that "where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, 'courts, may not replace [it] with an interpretation of their own.'" *de Nobel,* 885 F.2d at 1188 (quoting *Holland v. Burlington Indus., Inc.,* 772 F.2d 1140, 1149 (4th Cir.1985)). *See Hale,* 23 F.3d at 901; *Lockhart,* 5 F.3d at 77–78.

*IV. Analysis.*

According to Article II.C. of the Pension Plan, a participant becomes eligible for the pension fund upon disability retirement if he or she, "(a) has at least 10 years of signatory service prior to retirement, and (b) *becomes totally disabled as a result of a mine accident* occurring on or after December 16, 1993." (Def.'s Mem. at Ex. B, p. 7) (emphasis added). The Pension Plan provides further that "[a] Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor." (Def.'s Mem. at Ex. B, p. 7.) In sum, the Trustees impose a threefold obligation upon the claimant seeking to establish eligibility for disability pension benefits under the terms of the Plan: "(1) the applicant must be totally disabled as evidenced by an SSDI award, (2) he must have suffered a mine accident, and (3) the mine accident must be the cause of the disability." (Def.'s Mem. at 14.)

At issue in this case is the Trustees' interpretation of the term "mine accident," which, under the established adjudicative rubric, is the threshold inquiry.[2] The Plan itself does not define the term "mine accident." *See Hale,* 23 F.3d at 901; *Lockhart,* 5 F.3d at 78. The term is defined, however, in the rules and regulations adopted by the Trustees, which take the form of questions and answers ("Q & As").[3] Question and answer numbered 252 ("Q & A 252") provides that a miner is totally disabled as a result of a mine accident if the following conditions are met:

---

1. The Fourth Circuit has "yet to decide whether the 'arbitrary and capricious' standard previously used by the [court] is synonymous with the 'abuse of discretion' standard adopted in [*Firestone*]." *Brogan v. Holland,* 105 F.3d 158, 161 n. 3 (4th Cir.1997). "It is unclear whether the 'abuse of discretion' standard adopted in [*Firestone*] is synonymous with the 'arbitrary and capricious' standard previously used by the Fourth Circuit and most other courts." *Richards v. United Mine Workers Health & Retirement Fund,* 895 F.2d 133, 135 (4th Cir.1990). As held by the Fourth Circuit, however, this court's disposition would be the same under either standard, and therefore the difference between the two, if any, is immaterial. *See Brogan,* 105 F.3d

at 161 n. 3; *Lockhart v. UMWA 1974 Pension Trust,* 5 F.3d 74, 77 n. 5 (4th Cir.1993). *See also Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 125 n. 4 (4th Cir.1994).

2. In fact, the defendant Trustees concede that because they found no evidence that the plaintiff suffered a mine accident, they had not even conducted the "causal link analysis" required by Article II.C. of the Plan. (Def.'s Mem. at 12 n. 12.)

3. It is a "[g]iven that the Trustees have the authority to formulate the rules and regulations that implement the Plan." *Lockhart,* 5 F.3d at 78

(1) Unexpectedness: The disability must have been unlooked for and unforeseen; (2) Definiteness: The disability must be traceable to a definite time, place and occasion which occurred within the course of the mine worker's employment. A progressive disease does not meet this test and therefore cannot be a disability that resulted from a mine accident; (3) Force or impact: The disability must have been caused by the exertion or impact of some external physical force or object against the body or by the exertion or impact of the body against some external physical object; i.e., not simply as a result of the mine worker's own physical condition.

(Def.'s Mem. at Ex. C.) The Trustees found Vance's disability lacked "force or impact" as required under Q & A 252(3) and therefore, did not occur "as a result of a mine accident." [4]

The plaintiff contests this characterization on two grounds. First, he contends that "Q & A 252 should [not] be dispositive of the issue as it is contrary to the definition of disability retirement under the pension plan." (Pl.'s Mem. at 5 (citing Article II.C. of the Pension Plan).) Specifically, Vance claims that "[t]he requirement of the plan is only that he become totally disabled as a result of a mine accident...and have at least 10 years of signatory service." (Pl.'s Mem. at 4.) In addition to not contesting the length of Vance's signatory service, the plaintiff notes the defendants' failure to contest (1) the allegation that an incident involving the plaintiff occurred on March 2, 1994, and (2) the issuance of both the workers' compensation award of June 3, 1994, and the SSDI benefits award of April 18, 1996. Vance therefore posits that his case presents sufficient conditions under the language of the pension plan to support a claim for entitlement under the disability pension provisions. Second, applying the language of Q & A 252, Vance argues that "the back injury which [he] suffered was not under any circumstances the result of his own physical condition, [but rather] caused by a direct risk of [his] employment." (Pl.'s Mem. at 5.)

■ I find that there is substantial evidence to support the Trustees' conclusion that Vance did not suffer a "mine accident" as required by Q & A 252(3). Given the premise that the Trustees have the authority to formulate the rules and regulations that implement the Pension Plan (as specifically conferred by Article VIII.B.(1) of the Pension Plan), the Fourth Circuit opined that "it is not subject to question that the Trustees have the same discretion to interpret these rules and regulations as they have to interpret the Plan itself." *Lockhart*, 5 F.3d at 78 n. 6. *See also Brogan*, 105 F.3d at 162 (citing *Lockhart* for the same holding: "We afford the Trustees' interpretation of these rules the same deference that we give the Trustees' interpretation of the language of the Plan itself."). It is well-established that although the Pension Plan provides for pension benefits in the event of disability resulting from a mine accident, it does not actually define the term "mine accident." The Trustees acted within their discretionary authority to enact Q & A 252, which is the only relevant provision to this inquiry outside of the Article II.C. eligibility provisions themselves.

Of course, if the plaintiff is correct in asserting that Q & A 252 is contrary to the definition of disability retirement, then the Trustees' interpretation would be "contrary to the clear language of the plan," *de Nobel*, 885 F.2d at 1188, and an abuse of discretion. There are no reported cases, however, that hold that the application of Q & A 252 is contrary to the language of the Plan. The plaintiff's reference to Article II.C. of the Plan as a "definition of disability retirement" is a misnomer. Contained therein are the conditions necessary to qualify for eligibility for the Plan. These eligibility criteria are defined and explained in the Q & As, with the specific issue of "mine accidents" covered in Q & A 252. Therefore, Q & A 252 and its language supplement rather than contradict Article II.C.'s eligibility criteria.

■ Vance's reliance on the SSDI adjudication requirement in Article II.C. is thus

---

n. 6 (citing the Plan's provisions at Article VIII. B.(1), authorizing the Trustees "to promulgate rules and regulations to implement this Plan.")

4. The Trustees having limited themselves to this ground for denial of Vance's claim, I will not inquire into the "unexpectedness" and "definiteness" prongs of Q & A 252.

unavailing. Obtaining such an adjudication is not part of meeting the definition of a disabling "mine accident" but rather constitutes the satisfaction of but one of the three criteria for eligibility. In other words, proof of a SSDI adjudication is a necessary but not sufficient condition for receipt of benefits from the Pension Plan. In fact, the plaintiff's contention that meeting this single prong without also obtaining a determination of whether or not a qualifying "mine accident" was the subject of the favorable SSDI adjudication is itself in plain contravention of the clear language of Article II.C. Therefore, Q & A 252 is dispositive as to what constitutes a disabling mine accident, and the plaintiff's allegation of sufficient signatory employment, a recorded on-the-job incident, and workers' compensation and SSDI benefits in his favor are to no effect.

Addressing Q & A 252, the plain language of subpart three requires the presence of an "external physical force or impact," whether such force or impact is exerted upon the person or the person exerts the force or impact upon some external physical object. (Def.'s Mem. at Ex. C.) Among the available precedents, those decisions that have assessed injuries under the Q & A 252 rubric hold that the lack of an external force or impact renders such an injury outside of the "mine accident" definition. *See Allen v. Holland*, C.A. No. 5:96–0737, slip op. at 7–8 (S.D.W.Va. Aug. 6, 1997) (holding that where the plaintiff's claim has only stated that "while bent over or while standing, he experienced lower-back pain," the required evidence of force or impact has not been proffered and thus it fails to meet the definition of "mine accident"); *Rife v. Trustees of the United Mine Workers Health and Retirement Funds*, C.A. No. 95–0105–A, slip op. at 7 (W.D.Va. Feb. 16, 1996) (holding that "[t]he

'force or impact' element contained in Q & A 252 is not satisfied by an injury that occurs while a miner is squatting or rising from a squatting position.").

There are a number of accounts concerning what happened on March 2, 1994. Overall, the descriptions provided are consistent, and not one contains the component essential to the plaintiff's claim: force or impact as required by Q & A 252.

Prior to the onset of litigation in this court, Vance generally described the incident as one occurring while stepping through a constrained space at the mine site and then attempting to rise or straighten up.[5] Plaintiff now claims that on March 2, 1994, while on the job, he was passing through a metal stopping door, "approximately 34″ × 34″ with the bottom about 16″ off the mine floor." (Pl.'s Mem. at 4.) In order to go through the door, plaintiff claims that he adjusted his six feet, two inches frame into a "very awkward crouched position," attempted to step over the block to proceed, but was able to get only one foot through the door before the onset of pain. (Pl.'s Mem. at 4.) At that point, plaintiff alleges he attempted to continue on and clear the door but fell to his knees in extreme pain.

These facts clearly show no evidence of force or impact as required by Q & A 252 to qualify as a mine accident. Lower back pain associated with rising up or straightening up from a crouched position does not constitute a mine accident in the absence of an external physical force or impact. Vance's contention that the alleged incident constitutes a mine accident because it was "caused by a direct risk of [his] employment" is not supported by the plain language of the definition. Nowhere in Q & A 252 is it asserted that those disabling injuries resulting from the direct

---

5. Emergency department records from Buchanan General Hospital on the morning of March 2, indicate that Vance told an examining nurse he had "twisted his back when straightening up" while at work. (A.R. at 159.) An injury report, filed on March 3, 1994, indicates that, "while Gobel Stevenson was holding the smoke free door at [the mine site] Arnold Vance came out into the track entry [and] while raising hurt his lower back." (A.R. at 19.) The April 20, 1994, "Employer's First Report of Accident" states that "[e]mployee was crawling through a mine door while raising he complained of pain in lower back." (A.R. at 6.) On April 24, 1994, an examining physician took Vance's statement that he was "[c]oming through a 'stoppin door' and raised his legs to step through and developed severe lower back pain which soon began radiating down his right leg." (A.R. at 163.) A similar statement was made by Vance to another doctor on June 5, 1995. (A.R. at 25.) Finally, in his June 18, 1996, application for disability pension benefits, Vance claimed he had become totally disabled "going threw (sic) a stopping door." (A.R. at 246.)

risks of one's employment qualify as mine accidents. Were that the case, disabilities that result from a worker's own physical condition would qualify as disabling mine accidents for purposes of the Pension Plan, a result which would contravene the plain language of Q & A 252.

### V. Conclusion.

When confronted with Vance's account of the incident on March 2, 1994, the Trustees appropriately applied Q & A 252 as required. Finding that Vance's circumstances did not qualify within the clear language definition of a mine accident because there was no evidence of the requisite force or impact, the Trustees, in their discretion as fiduciaries of the Pension Plan, denied Vance's claim to disability pension benefits under Article II.C. of the Pension Plan. No finding of an abuse of discretion by the Trustees is possible where, as is the case here, substantial evidence supports the Trustees' decision.

Accordingly, judgment will be entered for the defendants.