**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT BUCHANAN; ALICIA
BUCHANAN; ANDREA BUCHANAN,
<u>Plaintiffs-Appellees,</u>

v.

No. 97-2484

CONSOLIDATED COAL COMPANY
BENEFIT PLAN FOR UMWA
REPRESENTED EMPLOYEES; B. V.
HYLER, Plan Administrator,
<u>Defendants-Appellants.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
William M. Kidd, Senior District Judge.
(CA-96-62-1)

Argued: October 26, 1998

Decided: December 17, 1998

Before ERVIN and HAMILTON, Circuit Judges, and
G. ROSS ANDERSON, JR., United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael James Florio, STEPTOE & JOHNSON, Clarks-
burg, West Virginia, for Appellants. Rocco Samuel Fucillo, WIL-

SON, FUCILLO & SHIELDS, Fairmont, West Virginia, for Appellees. **ON BRIEF:** Robert M. Steptoe, Jr., STEPTOE & JOHN-SON, Clarksburg, West Virginia, for Appellants. Brent Beveridge, Fairmont, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Consolidated Coal Company Benefit Plan for UMWA Represented Employees (Plan) and B. V. Hyler (Plan Administrator), appeal the district court's granting of summary judgment under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq. The district court reversed the Plan Administrator's denial of benefits under the Plan, concluding that the fiduciary had abused its discretion in denying Andrea Buchanan benefits. For the reasons set forth below, we affirm the district court's ruling.

I.

Appellee Andrea Buchanan, then 16 years old, was a beneficiary of the Plan, resulting from her father's employment with Consolidated Coal Company. Andrea was referred to Dr. John M. Carson, an Oral and Maxillofacial Surgeon, for treatment of facial-skeletal deformities.

In a letter dated April 21, 1994, Dr. Carson informed the Plan that Andrea required surgery to correct "a destructive process which interfered with the condylar[1] development of the lower jaw and develop-

_____

[1] Pertaining to the smooth, rounded eminence on the end of the lower jaw bone which enters into the formation of the joint with the temporal bone on the side of the skull. 2 J.E. SCHMIDT, ATTORNEY'S DICTIONARY OF MEDICINE AND WORD FINDER C-320 (1997).

2

ment of the upper jaw . . . ." Dr. Carson sought authorization for surgical correction of Andrea's deformities because of a "pronounced negative psychological impact on this patient as well as physical problems to include masticatory[2] insufficiency and speech problems."

Under Article III.A.(3)(e) and (11)(a)19 of the Plan, benefits are not generally provided for dental services. One exception to the plan, however, provides:

> (e) Oral Surgery
>
> Benefits are not provided for dental services. However, benefits are provided for the following limited oral surgical procedures if performed by a dental surgeon or general surgeon:
>
> . . .
>
> Temporomandibular Joint Dysfunction, only when medically necessary and related to an oral orthopedic problem.

It is important to note that the Plan itself does not define Temporomandibular Joint (TMJ) dysfunction, nor does it provide any standards for TMJ dysfunction.[3] Despite this exception, the Plan Administrator denied authorization for the surgery because he found no evidence that Andrea had TMJ dysfunction.

On August 26, 1994, Dr. Carson again wrote the Plan, seeking reconsideration of the prior denial of benefits. In this letter, Dr. Carson provided the American Association of Oral and Maxillofacial Surgeons (AAOMS) parameters for TMJ dysfunction surgery and noted that "Andrea possess [sic] all of the above listed indications and has suffered for years with facial pain." Dr. Carson asserted that the

_____

[2] Pertaining to, involved in, or serving the function of chewing. 4 J.E. SCHMIDT, ATTORNEY'S DICTIONARY OF MEDICINE AND WORD FINDER M-59 (1997).

[3] The first time appellants provided any definition or standard for TMJ dysfunction was in appellant's brief to this Court, which is outside the scope of review.

3

"[o]verwhelming evidence for this literature points to the association between skeletal malocclusions[4] and the development of TMJ dysfunction, as well as other functional deficits." After a review by the Plan's medical consultant, Peter Collis, M.D., the Plan again denied benefits finding no evidence that Andrea had TMJ dysfunction that would make surgical correction medically necessary.

The Plan Administrator enclosed two prior decisions of the Plan Trustees that supported the denial of benefits. In Resolution of Dispute (ROD) Case No. 88-255 and ROD Case No. 88-272, the Plan Trustees denied coverage under the Plan in two separate, unrelated cases involving TMJ dysfunction.

The Plan Trustees reviewed and upheld the denial of benefits under the Plan.

Following exhaustion of administrative remedies, which also resulted in a denial of benefits, the district court conducted a final review of the administrative record. In his September 24, 1997 Order, the district judge reversed the administrative denial of benefits for Andrea's surgery. The district judge found that "[t]he record before the Plan clearly shows that Andrea suffered from TMJ dysfunction, that surgery was medically necessary, and was related to an oral orthopedic problem." The district judge further found that "[t]here is simply no medical evidence put forth by the Plan to support its position," but that the Buchanans, "through Dr. Carson, have documented their claim and provided the appropriate standard of care for TMJ surgery, namely the AAOMS."

The Plan and Plan Administrator now appeal the district court's final judgment pursuant to 28 U.S.C. § 1291.

_____

[4] A condition in which the teeth of the upper and lower jaws do not meet properly so that the movement of the jaws is interfered with and the best results in the process of chewing are not attainable. 4 J.E. SCHMIDT, ATTORNEY'S DICTIONARY OF MEDICINE AND WORD FINDER M-28 (1997).

4

II.

The district court's entry of summary judgment is reviewed <u>de novo</u>. <u>Cole v. Keller Indust.</u>, 132 F.3d 1044, 1046 (4th Cir. 1998). This standard applies with equal force to cases involving the denial of benefits under ERISA. <u>See, e.g., Brogan v. Holland</u>, 105 F.3d 158, 161 (4th Cir. 1997).

III.

This Court has "developed a well-settled framework for review of the denial of benefits under ERISA plans." <u>Ellis v. Metropolitan Life Ins. Co.</u>, 126 F.3d 228, 232 (4th Cir. 1997). Where the benefit plan grants the administrator or the plan fiduciary discretionary authority to determine eligibility or to construe the terms of the plan, the decision to deny benefits "must be reviewed for abuse of discretion." <u>Id</u>. Under this deferential abuse of discretion standard, the administrator or fiduciary's decision will not be disturbed if it is reasonable. <u>Id</u>. A decision in this regard is "reasonable" if it is "the result of a deliberate, principled reasoning process and if it is <u>supported by substantial evidence</u>." <u>Id</u>. (emphasis added).

In determining whether or not the fiduciary abused its discretion, this Court has developed a five-factor test. <u>See Brogan v. Holland</u>, 105 F.3d 158, 161 (4th Cir. 1997) (quoting <u>Lockhart v. UMWA 1974 Pension Trust</u>, 5 F.3d 74, 77 (4th Cir. 1993)). Specifically, the Court must give "due consideration":

> [1] to whether administrator's interpretation is consistent with the goals of the plan; [2] whether it might render some language in the plan meaningless or internally inconsistent; [3] whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; [4] whether the provisions at issue have been applied consistently; [5] and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan.

<u>Id</u>. In light of the <u>Lockhart</u> five-factor test, we are convinced that the fiduciary abused its discretion.

5

First, the administrator's interpretation is wholly at odds with providing benefits under the Plan. Given the severe emotional and physical problems suffered by Andrea, the decision to deny her claim is patently offensive to the Plan's goals to provide health benefits.

Second, the denial of benefits also makes the plain language of the Plan meaningless. While it is undisputed that dental benefits are not normally covered by the Plan, the Plan itself provides an exception for TMJ dysfunction. The blanket denial of claims under this exception renders this exception useless; it gives the appearance of coverage without actually providing such coverage.

Third, the challenged interpretation is at odds with the procedural requirements of ERISA itself. The Plan Administrator failed to comply with the procedural requirements of 29 C.F.R.§ 2560.503-1, which provides that

> (f) Content of Notice. A plan administrator . . . shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
>
> (1) The specific reason or reasons for the denial;
>
> (2) Specific reference to pertinent plan provisions on which denial is based;
>
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
>
> (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503-1(f)(1)-(4); see also 29 U.S.C. § 1133. The Plan Administrator's denial of Andrea's claim did not state the specific reasons for the denial, but only the conclusory statement that Andrea was not covered under the Plan. The record before this Court is

6

devoid of any evidence that the Plan Administrator notified the Buchanans of any additional information necessary to perfect their claim or why such information was necessary. The record is similarly devoid of any attempts by the Plan Administrator to inform the Buchanans of the steps required for review of the denial of their claim.**5**

Fourth, while it is undisputed that the Trustees have been consistent in their interpretation of the TMJ exception, such consistency weighs against them where the Plan itself does not define TMJ dysfunction.

Finally, the fiduciary's interpretation is contrary to the plain meaning of the Plan. The Plan itself does not define TMJ dysfunction nor does it provide any standards for guidance. Indeed, the Buchanans' physician, Dr. Carson, provided the only standards in this case when he informed the Plan of the AAOMS standards for TMJ surgery. Dr. Carson, as the treating physician, clearly stated that Andrea suffered from TMJ dysfunction. In addition, the treating physician, an Oral and Maxillofacial Surgeon, was in a far better position to examine and diagnose Andrea's condition than was the Plan's medical consultant, Peter Collis. Therefore, the Plan abused its discretion in denying Andrea's benefits.

The Plan argues that its decision to deny benefits was not an abuse of discretion because the Plan provides certain "`external standards' . . . to which the Trustees refer to ensure consistent interpretation and application of the various plans that come within their purview." The Plan goes on to cite its own RODs as an example of these "external standards."

Aside from the fact that these external standards carry no precedential weight with this Court, the Plan cannot rely on its own previous decisions to deny benefits under a Plan for which they offer no defini-

_____

**5** While normally such a failure to comply with ERISA's procedural guidelines would require this Court to remand the case to the Plan Administrator for a "full and fair" review, a remand for further action is unnecessary where the evidence clearly shows that the Plan abused its discretion. See Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993).

7

tions and no guidance for TMJ dysfunction, except to state that bene-
fits were denied. This circular reasoning cannot stand. There is clearly
an overwhelming distinction in this case because the treating physi-
cian, Dr. Carson, provided the only standards by which to judge this
claim -- the AAOMS parameters for TMJ surgery. The Plan never
challenged the validity nor the applicability of these standards to
Andrea's case. Additionally, these so-called "external standards" fall
outside the four corners of the policy itself and provide no notice to
potential claimants that their claim may be in peril. Hence, the Plan's
argument must fail.

IV.

For the reasons stated above, we find that the Plan abused its dis-
cretion in denying benefits to Andrea Buchanan. The judgment of the
district court is affirmed.

AFFIRMED

8